830 So.2d 283 (2002)
Yolanda BERRY, et al.
v.
ORLEANS PARISH SCHOOL BOARD, et al.
No. 2001-CC-3283.
Supreme Court of Louisiana.
June 21, 2002.
TRAYLOR, J.
We granted a writ of certiorari in this case to consider whether an indemnity clause between the Lighthouse of the Blind and the Orleans Parish School Board requires the Lighthouse to indemnify the school board for the school board's alleged negligence. For the following reasons, we affirm the court of appeal and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
The Orleans Parish School Board ("OPSB") entered into a contract with the Lighthouse of the Blind in New Orleans, Inc. ("Lighthouse") whereby the Lighthouse provided mobility training services to Orleans Parish Public School students. Pursuant to that contract, the Lighthouse agreed to indemnify the OPSB in the following clause:
To the fullest extent permitted by law, the Contractor [Lighthouse] shall indemnify, hold harmless and defend the School Board, its employees and agents from and against all claims, demands, *284 suits, damages, judgments of sums of money, losses and expenses, including but not limited to attorney's fees and costs ("Claims") arising out of the performance of any of the services to be performed pursuant to the terms of this Agreement, provided that any such Claims (i) are attributable to bodily injury, sickness disease or death, or injury to or destruction of tangible property including the loss of use resulting therefrom; and (ii) is [sic] caused in whole or in part by any act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder....
After execution of the contract, two New Orleans Public School students were allegedly sexually molested by Francis O'Gara, an employee of the Lighthouse. As a result of the incident, the parents of the students filed separate suits against the Lighthouse and the OPSB.[1]
Subsequently, the Lighthouse filed a motion for summary judgment. While the Lighthouse did not dispute that it was required to indemnify the OPSB for Mr. O'Gara's actions, it argued the indemnity clause did not require it to indemnify the OPSB for the OPSB's independent negligence. The OPSB filed a cross motion for summary judgment, arguing that all the claims in this case were dependent upon Mr. O'Gara's conduct; therefore, the Lighthouse was required to indemnify it for all negligence, including its independent negligence.
After a hearing, the trial court granted the motion for summary judgment filed by Lighthouse and denied OPSB's motion. In its judgment, the trial court found that the contracts in question between the OPSB and the Lighthouse require the Lighthouse to indemnify the OPSB for any acts of negligence or fault committed by the Lighthouse or its employees for which the OPSB is found to be liable. The court further found that the indemnity contracts in question do not require the Lighthouse to indemnify the OPSB for any acts of independent negligence committed by the OPSB or its employees.
From this ruling, the OPSB applied for supervisory relief. The Court of Appeal reversed the trial court's ruling. The court reasoned that the contractual language providing that "all claims ... arising out the performance of any services to be performed under the terms of this Agreement," coupled with the language "regardless of whether or not it is caused by a party indemnified hereunder," was sufficient to encompass the OPSB's independent negligence. Accordingly, the court of appeal reversed the judgment of the trial court granting summary judgment in favor of the Lighthouse and rendered summary judgment in favor of the *285 OPSB to require the Lighthouse to defend and indemnify the OPSB.
We granted a writ of certiorari to review the lower courts' conclusions. Berry v. Orleans Parish School Board, et al., 01-3283 (La.3/15/02), 811 So.2d 891.

LAW AND ANALYSIS
In interpreting contracts, including indemnity clauses, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent of the parties. La. Civ.Code arts.2045, 2047; see e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 (La.1994), 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ.Code art. 2046.
This issue of whether an indemnitee may be indemnified against its own negligent acts was addressed over thirty years ago in Arnold v. Stupp Corp., 205 So.2d 797 (La.App. 1st Cir.1967), writ not considered, 251 La. 936, 207 So.2d 540 (1968). In that case, the court of appeal surveyed the case law and noted there was a majority and minority view on this issue:
The general rule is stated thus: `A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. 27 Am.Jr., Indemnity, § 15, page 464; 42 C.J.S. Indemnity § 12, page 580.' The established principle supporting the rule is that general words alone, i.e., `any and all liability', do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter.
The minority view is bottomed on the premise that the words `any and all liability' are unambiguous and the use thereof means just that and the restrictive interpretation adhered to in the majority view is violative of the rule of law that a contract freely entered into, which is not against public policy or prohibited by law, is the law between the parties and subject to judicial recognition and enforcement. 77 A.L.R.2d 1134.
For reasons hereinafter stated we are of the opinion and so hold that Louisiana is committed to the majority view. (Citations omitted)
Subsequently, in Perkins v. Rubicon, Inc., 563 So.2d 258 (La.1990), this court held that an indemnity contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms:
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms. Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La. 1986); Polozola v. Garlock, 343 So.2d 1000 (La.1977). The indemnity agreement here unequivocally states that B & B "shall indemnify and hold [Rubicon] harmless from all claims, suits, actions, losses and damages for personal injury,... even though caused by the negligence of [Rubicon]." As the court of appeal concluded both in the present case and in earlier litigation interpreting the same contract, Reliance Insurance Company v. Barnard & Burk, Inc., 428 *286 So.2d 1097 (La.App. 1st Cir.), writ denied, 433 So.2d 154 (La.1983), the parties clearly intended that B & B would assume responsibility for injuries caused by the negligent acts of the employees of Rubicon.
The Lighthouse contends that the indemnity language in this case does not unequivocally state that the Lighthouse agreed to indemnify OPSB under these circumstances, i.e., for the OPSB's independent acts of negligence. Thus, Lighthouse argues that the court of appeal's ruling runs against the well established principle that Louisiana courts strictly construe the language of these types of clauses and have historically declined to enforce the provisions unless an unambiguous mutual intent to accept liability is articulated in the contract.
The Lighthouse further argues that the OPSB's acts do not arise out of Lighthouse's performance under the contract, and do not fall within actions that were contemplated as covered under the indemnity provision. Lighthouse points out that plaintiffs' allegations involve purely independent duties of the OPSB, such as its duty to investigate prior allegations of molestation which had been reported to it, which are separate and apart from any actions of the Lighthouse. While the Lighthouse concedes that the petitions of both students claim that the concurrent negligence of the OPSB and Lighthouse resulted in their harm, it asserts that both petitions also contain allegations that apply solely to the OPSB. If the students had alleged that Mr. O'Gara's conduct was the sole factor in causing their injuries, Lighthouse would not dispute the application of the indemnity clause because Mr. O'Gara was its employee. However, as to allegations that describe independent, negligent acts of the OPSB, Lighthouse contends it is not responsible to indemnify OPSB for its failure to comply with certain duties and safeguards.
In response, OPSB argues that all of the acts that the plaintiffs allege caused their daughters' injuries arose out of the performance of services by Mr. O'Gara, who was the employee of the Lighthouse. Thus, all the claims made by the plaintiffs are dependent upon Mr. O'Gara's conduct. Accordingly, they argue the language of the indemnity clause clearly requires the Lighthouse to defend and indemnify OPSB against all claims made in the two lawsuits. Additionally, they argue that the allegation that OPSB was partly at fault does not affect the Lighthouse's obligation to defend and indemnify OPSB because the indemnity provisions specifically applies, "regardless of whether or not it [the injury] is caused in part by a party indemnified hereunder."
In ruling for the OPSB, the court of appeal relied on the phrase "arising out of the performance of any of the services to be performed pursuant to the terms of this Agreement .... regardless of whether or not it is caused in part by a party indemnified hereunder ...," which it contends demonstrates OPSB is "clearly and unambiguously" entitled to indemnity. See Harris v. Agrico Chem. Co., 570 So.2d 474 (La.App. 5 Cir.1990). In addition to finding the contract clause unambiguous, the court of appeal found the clause consistent with the public policy disfavoring indemnification of a party solely responsible for causation because the OPSB contract refers only to damage caused "in part" by the OPSB. In its reasoning, the court of appeal noted:
In the instant case the acts of negligence alleged against the OPSB did not necessarily have to result in damage to the plaintiffs. The alleged negligence of the OPSB could be described as secondary to that of the Lighthouse through its *287 offending employee, Mr. O'Gara. While the courts of this state do not distinguish between active and passive negligence when allocating fault, from a public policy perspective, it is certainly much less offensive to permit the indemnification of the OPSB for its passive negligence when compared to the intentional actions of Mr. O'Gara than it would be were OPSB seeking indemnification for acts of sole negligence.
We agree with the court of appeal's conclusion. As we stated in Rubicon, the "arising out of ..." language requires an connexity analysis independent of contractor fault that asks whether "the particular injury would have occurred but for the performance of work under the contract." But for Lighthouse's employment of Mr. O'Gara to perform services under the contract for these students, Mr. O'Gara would not have had access to the children. Under the uncontested facts of this case, we can see no scenario as a matter of law in which the OPSB's negligence could be viewed as the sole cause of the injuries to these plaintiffs.

CONCLUSION
For the foregoing reasons, we find that the plaintiffs' injuries arose out of performance of the contract between Lighthouse and OPSB, and Lighthouse is required to indemnify OPSB.

DECREE
For the reasons assigned, we affirm the court of appeal's judgment that renders summary judgment in favor of the OPSB to require the Lighthouse for the Blind to defend and indemnify the OPSB. The case is remanded to the district court for further proceedings consistent with this opinion.
AFFIRMED.
CALOGERO, C.J., dissents for reasons assigned by KNOLL, J.
VICTORY, J., concurs.
KNOLL, J., dissents and assigns reasons.
KNOLL, J., dissenting.
This writ concerns an indemnity agreement between the Lighthouse of the Blind in New Orleans, Inc. ("Lighthouse") and the Orleans Parish School Board ("OPSB"). The sole issue in this matter is whether the indemnity agreement unequivocally requires Lighthouse to indemnify the OPSB for the OPSB's negligence. Finding the indemnity agreement does not unequivocally require such indemnity, I respectfully dissent for the following reasons.
The OPSB entered into a contract with Lighthouse, whereby Lighthouse agreed to provide mobility training services to Orleans Parish public school students. Pursuant to the contract, Lighthouse also agreed to indemnify the OPSB as follows:
To the fullest extent permitted by the law, the Contractor [Lighthouse] shall indemnify, hold harmless and defend the School Board, its employees and agents from and against all claims, demands, suits, damages, judgments of sums of money, losses and expenses, including but not limited to attorney's fees and costs ("Claims"), arising out of the performance of any of the services to be performed pursuant to the terms of this Agreement, provided that any such Claims (i) are attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and, (ii) is [sic] caused in whole or in part by any act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of *288 them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder....
Under this indemnity agreement, Lighthouse is required to indemnify the OPSB when: (1) the claim arises out of the performance of any of the services to be performed pursuant to the terms of the contract; (2) the claim is attributable to bodily injury; and (3) the claim is caused in whole or in part by any act or omission of Lighthouse or its employees. The primary dispute between Lighthouse and the OPSB is over the first requirement, i.e., whether the claim arises out of the performance of any of the services to be performed pursuant to the terms of the contract. Lighthouse contends the plaintiffs' negligence claims against the OPSB do not arise out of the performance of any services to be performed pursuant to the terms of the contract. Instead, Lighthouse maintains the negligence claims are based on the OPSB's alleged breach of a legal duty owed to its students. It alleges this duty was owed irrespective of the contract and thus the claims for alleged breach of this duty do not arise out of any of the services to be performed pursuant to the terms of the contract.
On the other hand, the OPSB argues all of the acts the plaintiffs allege caused their daughters' injuries arose out of the performance of services provided by Francis O'Gara, a Lighthouse employee, pursuant to the terms of the contract with Lighthouse. Thus, the OPSB alleges, because the plaintiffs' negligence claims are based on Mr. O'Gara's conduct, the claims arise out of the performance of services to be performed under the contract and thus the language of the indemnity clause clearly requires Lighthouse to defend and indemnify it for these claims. The OPSB further contends the allegation that it is partly at fault does not affect Lighthouse's obligation to defend and indemnify because the indemnity agreement specifically applies "regardless of whether or not it [the injury] is caused in part by a party indemnified hereunder."
I find the indemnity agreement is subject to multiple interpretations and does not unequivocally require Lighthouse to indemnify the OPSB for the OPSB's own negligence. All of the cases the OPSB cites and relies upon involve indemnity agreements specifically using the term negligence. The present indemnity agreement does not use the term negligence and is broad and general in its applicability. See Stewart v. Winn Dixie Louisiana, Inc., 96-599 (La.App. 5th Cir.12/11/96), 686 So.2d 907 (broad and general words alone do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter). Thus, considering this court's clear line of jurisprudence holding indemnity agreements will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms, e.g., Polozola v. Garlock, Inc., 343 So.2d 1000, 1003 (La.1977); Perkins v. Rubicon, Inc., 563 So.2d 258, 259 (La.1990), I would reverse the court of appeal's ruling and reinstate the district court's judgment.
NOTES
[1] With regard to the OPSB, the suits alleged various grounds of negligence on its part, including: (1) failing to properly supervise the handling of children in their custody; (2) negligent hiring and failing to properly screen employees; (3) allowing Mr. O'Gara to leave the school grounds with a minor; (4) failing and/or neglecting to protect the minor children from the wrongful/criminal acts of another or to provide them with a safe environment; (5) failing and/or neglecting to identify the risks of harm posed by the children's interaction with Mr. O'Gara; (6) failing and/or neglecting to investigate the background of personnel who had access to blind and retarded children; (7) failing to properly investigate the prior reported incidents of molestation and improper touching which were reported to the School Board; and (8) wanton and reckless disregard for the rights and safety of the minor children by allowing them to be molested and improperly touched while in the care and custody of the School Board.