935 So.2d 186 (2006)
Todd Allen DEAN and Cheryl Dean
v.
GRIFFIN CRANE & STEEL, INC., Fire & Casualty Company of Connecticut, Earnest Williams, Jr., Coregis Insurance Company, ABC Insurance Company, XYZ Insurance Company and Allstate Insurance Company.
No. 2005 CA 1226.
Court of Appeal of Louisiana, First Circuit.
May 5, 2006.
Robert E. Winn, April L. Watson, New Orleans, Counsel for Third-Party Plaintiffs/Appellees Griffin Crane & Steel Service, Inc., Security Insurance Company of Hartford, Successor in Interest to the Fire and Casualty Company of Connecticut, and Earnest Williams, Jr.
Claire Breaux Ventola, Magali A. Puente Martin, Jaime M. Cambre, Metairie, Counsel for Third-Party Defendant/Appellant Abita Brewing Company, L.L.C.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
*187 GAIDRY, J.
This is an appeal of a partial summary judgment finding the third-party-defendant/appellant, Abita Brewing Company, L.L.C., liable for contractual indemnity to *188 the third-party plaintiffs/appellees, Griffin Crane & Steel Service, Inc., Security Insurance Company of Hartford, and Ernest Williams, Jr. For the reasons set forth below, we reverse the trial court's judgment and render judgment in favor of the third-party defendant/appellant, Abita Brewing Company, L.L.C., dismissing it as a party in this litigation.

FACTS AND PROCEDURAL HISTORY
On December 5, 2001, James R. Franklin, the plant engineer for Abita Brewing Company, L.L.C. (Abita), a brewery in Abita Springs, Louisiana, telephoned Griffin Crane & Steel Service, Inc. (Griffin Crane) of Pearl River, Louisiana, to secure the services of a large crane and an operator for the purpose of moving and positioning large fermentation tanks at the brewery. Abita's premises were approximately twenty to thirty miles from Griffin Crane's equipment yard. It took approximately an hour for the mobile or self-propelled crane to travel from Griffin's equipment yard to the brewery.
The crane was operated by Griffin Crane's employee, Ernest Williams, Jr. After arriving at the brewery at 12:00 p.m., Mr. Williams operated the crane under the direction of Mr. Franklin, with the rigging of the fermentation tanks to the crane being handled by Abita employees. After the task of moving the tanks was complete, Mr. Williams filled in the time information on a form lease document and secured Mr. Franklin's signature as Abita's agent authorized to agree to its terms. Mr. Williams departed Abita's premises no later than 1:30 p.m.
The accident forming the basis of this litigation occurred at approximately 2:12 p.m. on Louisiana Highway 41 in Pearl River, as Mr. Williams was returning to his employer's yard with the crane. As Mr. Williams approached Louisiana Highway 41's intersection with Louisiana Highway 11, the crane struck the rear of a school bus operated by Todd A. Dean.[1] Mr. Dean and his wife (the plaintiffs) subsequently sued Mr. Williams, Griffin Crane, and their liability insurer, Security Insurance Company of Hartford for damages. The plaintiffs' petition alleged that the sole cause of the accident was Mr. Williams's negligence, imputable to Griffin Crane as his employer and to their liability insurer. In turn, those defendants served a third-party demand upon Abita, alleging that they were entitled to indemnity from Abita for the plaintiffs' claims under the terms of the lease contract.[2] Abita answered the third-party demand, denying its liability for indemnity.
On June 20, 2003, Abita filed a motion for summary judgment, seeking the dismissal of the third-party demand on the grounds that the indemnity provisions of the contract were ambiguous and that Mr. Franklin had no actual or apparent authority to bind Abita to those terms. Its motion was denied by the trial court following a hearing. After further proceedings and discovery, Abita filed a second motion for summary judgment on September 27, 2004, and the third-party plaintiffs (collectively referred to for convenience as "Griffin Crane") responded with a cross-motion for partial summary judgment recognizing their claimed right to contractual indemnity.
*189 The opposing motions for summary judgment were heard on January 12, 2005. By judgment signed February 7, 2005, the trial court denied Abita's motion and granted the third-party plaintiffs' motion, designating that judgment as final for purposes of appeal. Abita now appeals the partial summary judgment in favor of Griffin Crane, as well as the denial of its motion for summary judgment.[3]

STANDARD OF REVIEW
As this is an appeal from a summary judgment, it is subject to de novo review as to whether summary judgment was appropriate, using the same criteria governing the trial court's consideration. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, p. 5 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 828, writs denied, 04-2314, 04-2323, 04-2326, 04-2327 (La.11/19/04), 888 So.2d 207, 211, 212.
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate. Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029.

ANALYSIS
The contract at issue was a printed, single-sheet form document bearing the title, "EquipmentDaily Time Sheet," beneath Griffin Crane's corporate letterhead. It is immediately apparent that the contract was more than a simple lease of the crane for a fixed term of time.[4] It also contemplated the providing of the services of the crane operator to perform "work" at a "job location" or "site." The form contract's language contemplated that a customer's "unit" would be "lifted and/or hauled" by the "leased equipment."
Mr. Williams supplied the information to complete the form contract for this particular agreement by writing that information on the front page by hand. Other than the signature of Mr. Franklin as Abita's authorized agent, all handwritten entries were composed and written by Mr. Williams. The "job location" was described as "Abita beer [sic]." The "work description" was defined as "unload tanks." (Given those descriptions in the contract and the evidence in the record, the parties clearly did not contemplate any hauling or transportation of Abita's tanks off its premises.) The hourly invoicing section of the form contract also provided *190 for entries for "time left yard," "time start work," "time finished work," and "time returned to yard." Mr. Williams entered "11:00 a.m." for "time left yard" and "12:00 a.m. [sic]" for "time start work," but did not make any other time entries, other than to designate a four-hour minimum in hourly charges, at a rate of $90.00 per hour. He also entered a $40.00 charge for a "permit" for the crane's travel "to and from job site."
The reverse of the contract sets out the following provision, the interpretation of which is the central issue of this appeal:
GENERAL CONDITIONS[5]
It is agreed that the equipment listed on the front of this Time Sheet is subject to the following terms and conditions:
...
3. LIABILITY OF LESSEE
Liability for injury, disability and death of workmen and other persons caused by the operation or handling of the equipment during the period shall be assumed by the Lessee, and he shall indemnify that [sic] Lessor against all such liability. Lessee also agrees to indemnify and hold Lessor and Lessor's Insurance Carrier harmless against any loss, damage, claims or liability however caused, even if caused by Lessor's sole negligence, arising out of the performance of the work while using Lessor's equipment. Griffin Crane Service assumes no liability for any type of damages and/or injuries caused by the actions of customer [sic], including customer's [sic] negligence, willful misconduct and/or strict liability. (Emphasis supplied.)
We begin our interpretation of the contract at issue with the following established principle in mind: A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms. Berry v. Orleans Parish School Board, 01-3283, p. 4 (La.6/21/02), 830 So.2d 283, 285, citing Perkins v. Rubicon, Inc., 563 So.2d 258, 259 (La.1990). This court expressed the basis for this principle over thirty-eight years ago in Arnold v. Stupp Corporation, 205 So.2d 797, 799 (La.App. 1st Cir.1967), writ not considered, 251 La. 936, 207 So.2d 540 (1968): "[G]eneral words alone, i.e., `any and all liability', do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for *191 damages occasioned by the sole negligence of the latter."
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. McKinney v. South Central Bell Telephone Company, 590 So.2d 1220, 1222 (La. App. 1st Cir.1991), writ denied, 592 So.2d 1302 (La.1992), citing Liem v. Austin Power, Inc., 569 So.2d 601, 608 (La.App. 2nd Cir.1990). The following general codal principles guide our interpretation of the contract, including its indemnity provisions. See Berry, 01-3283 at p. 3, 830 So.2d at 285.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. This is an objective inquiry; thus, "a party's declaration of will becomes an integral part of his will." La. C.C. art. 2045, Revision Comments  1984, (b). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
Louisiana Civil Code article 2056 provides:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Similarly, La. C.C. art. 2057 sets forth an analogous rule:
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.
In support of its position, Griffin Crane cites Perkins v. Rubicon, Inc., supra. Our supreme court in Rubicon held that an indemnity agreement requiring a maintenance contractor to indemnify an industrial plant owner for any liability arising out of its performance of its maintenance contract, even if caused by the plant owner's negligence, was enforceable. There, the agreement unequivocally provided that the contractor agreed to "indemnify and hold [the owner] harmless from all claims, suits, actions, losses and damages for personal injury, including death and property damage, even though caused by the negligence of [the owner], arising out of [the contractor's] performance of the work contemplated by this agreement." Rubicon, 563 So.2d at 258. An employee of the contractor performing maintenance work inside a tank at the plant under the maintenance contract was injured by the negligent release of phosgene gas by employees of the owner, and sued the owner. The supreme court observed:
Because the purpose of the indemnity agreement is to allocate risks inherent in the activity between the parties to the contract, we must determine whether the risk that resulted in the injury was one contemplated by the parties to the contract. In the present case, [the owner] wished to contract out its maintenance *192 work, but it obviously did not wish to assume the greater risks of injury inherent in having a contractor perform the maintenance work. These additional risks include not only those caused by the potential fault of the contractor, but also those caused by [the owner] that result in injuries to the contractor's employees. Accordingly, the parties agreed that [the contractor] would bear the risk of injuries "arising out of" its performance of the contract. Rather than requiring fault on the part of the contractor, we read this language as requiring a connexity similar to that required for determining cause-in-fact: Would the particular injury have occurred but for the performance of work under the contract?
Id. at 259.
Griffin Crane focuses its argument on the phrase "arising out of," insisting that application of Rubicon's "but for" analysis compels the conclusion the result reached by the trial court. In short, Griffin Crane contends that but for the performance of its work under the contract, which included its crane's travel to and from Abita's brewery, the accident would not have occurred; thus, the accident arose out of the performance of the work. We disagree. The contract at issue expressly limited the connexity required for imposition of unconditional indemnity to "the work." The contract expressly defined the "work description" as "unload tanks," and unequivocally distinguished the "time [the crane] left yard" from the "time [the crane] start [sic] work." The focus of analysis should therefore be the meaning of the "work" being performed.[6] In Rubicon, there was no dispute as to the nature of the work upon which the right to indemnity was based. Such is not the case here. The factual circumstances of Rubicon are thus distinguishable.
It is clear from the record, and undisputed by the parties, that the accident at issue occurred off the "job location" (Abita's premises) and following the completion of the described "work" of "unload[ing]" (moving) the tanks. Griffin Crane nevertheless contends that it is entitled to indemnity from Abita for all liability "caused by the operation or handling of the equipment" during the entire term of the lease, thus encompassing the travel time of the crane charged to Abita.
While it is true that paragraph 3 of the "General Conditions" obligates Abita to indemnify Griffin Crane for "[all][l]iability for injury, disability and death of ... other persons caused by the operation or handling of the equipment during the period," that sentence does not expressly and unequivocally include liability for Griffin Crane's own negligence or fault within that obligation. The "period" is not defined; that term could be interpreted as referring to either the term of lease of the equipment *193 or the time period of "performance of the work."[7] The indemnity obligation set forth in that sentence was obviously a separate obligation from the unconditional indemnity for liability "arising out of the performance of the work while using Lessor's equipment" in the following sentence, given the use of the adverb "also" in the latter sentence and the limited "work description."[8]
Griffin Crane prepared and furnished the form contract, and its employee supplied the descriptions for the "job location" and the "work" to be performed for Abita. If Griffin Crane had actually intended the work for which unconditional indemnity was owed to encompass its crane's travel to and from Abita's premises, it easily could have supplied that necessary explanation in the contract.[9] It did not. The indemnity provisions do not unequivocally obligate Abita to indemnify Griffin Crane for liability for the latter's own negligence for any activity arising from the lease of the crane, as opposed to the described "work" performed. Accordingly, Griffin Crane must bear the burden of any ambiguity in the indemnity provisions.
In summary, it is certainly reasonable to conclude that the parties allocated to Abita all risks of liability resulting from the work performed by Griffin Crane's employee operating its crane on Abita's premises, under the control and supervision of Abita's plant engineer, even if such liability arose from Griffin Crane's negligence during that activity. But the risk involved in this case arose beyond the ambit of unconditional indemnity agreed to by the parties. No indemnity is owed as a matter of law under the uncontested facts of this case.

DECREE
The partial summary judgment in favor of the third-party plaintiffs/appellees, Griffin Crane & Steel Service, Inc., Security Insurance Company of Hartford, and Ernest Williams, Jr., granting their motion for partial summary judgment and denying the motion for summary judgment of the third-party defendant/appellant, Abita Brewing Company, L.L.C., is hereby reversed. The motion for summary judgment of the third-party defendant/appellant, Abita Brewing Company, L.L.C., is hereby granted, and the third-party demand of the third-party plaintiffs/appellees is accordingly dismissed with prejudice. All costs of this appeal are assessed to Griffin Crane & Steel Service, Inc., Security Insurance Company of Hartford, and Ernest Williams, Jr.
REVERSED AND RENDERED.
DOWNING, J., concurs and assigns reasons.
*194 DOWNING, J., concurs and assigns reasons.
I concur with the result and, generally, with the rationale stated in the majority opinion. I write to address footnote 3 and its discussion of the appealability of the denial of a motion for summary judgment.
The denial of a motion for summary judgment is an interlocutory judgment that cannot be appealed. Trahan v. Rally's Hamburgers, Inc., 96-1837, p. 9 (La. App. 1 Cir. 6/20/97), 696 So.2d 637, 642. La. C.C.P. art. 968 states in pertinent part: "An appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment." See Towles v. Heirs of Morrison, 428 So.2d 1029 (La.App. 1 Cir.1983) where this court stated: "A trial court's denial of a motion for summary judgment is not reviewable even upon appeal from a final judgment on the merits." (Emphasis added.)
Towles is the controlling jurisprudence in this circuit. But see CITGO Petroleum Corp. v. State ex rel. Dept. of Revenue and Taxation, 02-0999, p. 10 n. 8 (La.App. 1 Cir. 4/2/03), 845 So.2d 558, 563 n. 8, wherein we discussed the line of cases in conflict with the clear terms of La. C.C.P. art. 968 and controlling First Circuit jurisprudence.
Even so, this court apparently has dismissed Abita's properly brought writ application seeking review of the denial of its motion for summary judgment on the basis that the judgment was appealable. Under law of the case principles, I accede to the appealability of this judgment.
NOTES
[1] The accident location was approximately four miles from Griffin's equipment yard.
[2] The third-party demand did not assert any independent fault contributing to the accident or vicarious liability on the part of Abita, but only its liability as a conventional indemnitor under the contract at issue.
[3] When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. Judson v. Davis, 04-1699, p. 8 (La.App. 1st Cir.6/29/05), 916 So.2d 1106, 1112, writ denied, 05-1998 (La.2/10/06), 924 So.2d 167. Arguably, the present appeal is restricted to the issue of Griffin Crane's right to contractual indemnity from Abita for the plaintiffs' claims. Nevertheless, because the issues involved in the granting of partial summary judgment are identical to those presented by Abita's motion for summary judgment, it is clearly appropriate to review the interlocutory judgment denying its motion at this time. Thus, Abita may properly seek appellate review of that interlocutory judgment in this appeal. Abita had also applied for supervisory writs to this court under docket number 2005 CW 0883 on the issue of the interlocutory judgment denying its motion. On August 8, 2005, we issued an order dismissing the application on the grounds that Abita could properly seek review of that judgment via this appeal.
[4] See La. C.C. art. 2668, et seq.
[5] The "General Conditions" also include the following pertinent provisions:

1. DAMAGE TO EQUIPMENT
The Lessee shall indemnify the Lessor and Lessor's Insurance Carrier against all loss and damages to the leased equipment during the Period.
2. DAMAGE TO PROPERTY
Griffin Crane Service assumes no liability for damage to physical facilities, including, but not limited to, parking lots, roads, drives and underground improvements and/or utilities. Griffin Crane Service assumes responsibility only for physical damage caused by its sole gross negligence to the unit being lifted and/or hauled. Griffin Crane Service will not be responsible for any consequential or special damages caused by injury or damage to physical properties and/or facilities, including but not limited to, parking lots, [etc.]
...
4. RIGGING
Rigging not provided [sic] by Griffin Crane Service. Thus, Griffin Crane Service will not assume liability for rigging provided. It is understood and agreed that customer is to provide access in and out of site.
[6] As the supreme court explained in Berry, "the `arising out of ...' language requires a connexity analysis independent of [indemnitor] fault that asks whether `the particular injury [here, the motor vehicle accident injuries] would have occurred but for the performance of work [the unloading of the tanks] under the contract.'" Berry, 01-3283 at p. 7, 830 So.2d at 287. (Emphasis supplied.) No direct, logical connexity exists between the limited scope of the work of unloading the tanks on Abita's premises and the motor vehicle accident, which was significantly removed both in time (over forty minutes after the crane left Abita's premises) and location (from sixteen to twenty-six miles) from that finished work. In contrast, the connexity in Rubicon was "clearly established by showing that the injured employee was engaged in work under the contract at the time of his injury. Quite simply, [the injured employee] would not have been present at the site to be injured but for [the indemnitor's] performance of the work under the contract." Rubicon, 563 So.2d at 259. (Emphasis supplied.)
[7] In paragraph 5 of the General Conditions, entitled "Insurance," the lessee was required to maintain general liability and other types of insurance "during the lease period." While it might reasonably be argued that the term "lease period" serves to define the term "period" used elsewhere, it seems just as reasonable to conclude that the addition of the descriptive adjective "lease" in paragraph 5 was specifically intended to distinguish the overall term of the equipment lease from the time period of the "work" or the "job." At any rate, the separate time entries for the crane's departure from Griffin Crane's yard and the "start" of "work" show that the time period charged for the crane's use was distinguished from the time of the "work" activity for which Griffin Crane was engaged by Abita.
[8] We cannot presume that the addition of "also" to form the phrase "also agrees" was mere surplusage. See La.C.C. arts. 2049, 2050. This interpretation comports with the standard of strict construction required for indemnity agreements.
[9] The work description could simply have included travel "to and from job site," a descriptive phrase used in describing the permit for which a charge was included.