**Opinion issued June 6, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00072-CV

———————————

### ENTERPRISE MARINE SERVICES LLC, Appellant

### V.

### MOTION INDUSTRIES INC. D/B/A VOORHIES SUPPLY COMPANY, LLC, A DIVISION OF MOTION INDUSTRIES INC., Appellee

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-39423A**

---

## MEMORANDUM OPINION

Enterprise Marine Services LLC (Enterprise) and Motion Industries, Inc. d/b/a Voorhies Supply Company, LLC, a division of Motion Industries, Inc. (Voorhies) dispute the meaning of a contractual indemnity provision under Louisiana law. On cross-motions for summary judgment, the trial court ruled against

Enterprise, the indemnitee, and for Voorhies, the indemnitor. Because Enterprise correctly interprets the indemnity obligation, we reverse and remand for further proceedings.

## Background

In 2009, Enterprise's predecessor, CTCO Shipyard of Louisiana, LLC (CTCO), sought to consolidate the storerooms at its shipyard in Houma, Louisiana and outsource the procurement and disbursement of supplies for its vessels by having a vendor at the shipyard. CTCO agreed to lease Voorhies warehouse space at CTCO's shipyard, and Voorhies agreed to use the warehouse exclusively to sell products to CTCO. By having Voorhies supply the products CTCO needed for its vessels from this central location, CTCO "eliminate[d] the need for [it] to account for, procure, or replenish" its product inventory.

CTCO and Voorhies executed a written Supply Agreement that is "governed, interpreted, construed, and regulated by the laws of Louisiana." In the Supply Agreement, Voorhies agreed to: purchase CTCO's existing product inventory, "control and account for distributing the[] products for [CTCO's] use," and "use best efforts to minimize obsolescence of the products[.]" Voorhies promised to "provide CTCO with on-time delivery of the[] products and expertise along with the product manufacturers in the recommended use and application of the products." The non-exclusive list of products included industrial supplies; bearing and PT products;

2

marine and janitorial supplies; fasteners, pipe fittings, weld fittings, and specialty products; hydraulic pumps, hydraulic motors, controls, and hydraulic hose and fittings; hand, air, and power tools; and repair of these power tools.

In exchange, CTCO agreed to provide Voorhies a rent-free "Building" or "Premises" at the shipyard with some conditions. Voorhies was responsible for "all building services" and "utilities, water, janitorial, and ordinary repair and maintenance" and had to "keep the Building in good order, repair, and condition[.]" Voorhies also had to maintain commercial general liability insurance "covering the Premises" and insure both CTCO and Voorhies "against loss of the contents of the Premises, including the inventory."

The parties also executed the disputed indemnity provision in CTCO's favor:

Voorhies will occupy and use the Building and Premises at its own risk. Without limitation of any other provision herein, CTCO . . . shall not be liable for any injuries to any person or damages to property from any cause whatsoever, whether owing to the Building or any part thereof, or any appurtenance thereof, being in need of repair or owing to the happening of any accident in or about the Building or the Premises or owing to any act of neglect of Voorhies or of any employee of Voorhies or visitor to the Building. Without limitation, this provision shall apply to injuries and damage caused by nature, rain, flood, hurricane or tropical storm, snow, ice, wind, frost, water, steam, gas, or odors in any form or by the bursting or leaking of windows, doors, walls, ceilings, floors, pipes, gutters, other fixtures; and to damage caused by fixtures, furniture, equipment, and the like situated at the Premises, whether owned by Voorhies or others.

Voorhies shall protect, defend, indemnify, and hold harmless CTCO . . . from any and all claims, demands and/or causes of action of any nature or kind, including but not limited to any claims for personal

injuries . . . brought by any person or entity which are in any way related to or connected with or arise out of this Agreement and/or Voorhies'[s] use or occupancy of the Premises, whether or not caused in whole or in part by active, passive, sole or concurrent negligence, strict liability or other fault or condition (preexisting or otherwise) attributable to CTCO . . . .

CTCO later sold its shipyard to Enterprise and, with Voorhies's consent, assigned the Supply Agreement to Enterprise (Assignment). Enterprise assumed CTCO's obligations under the Supply Agreement, and Voorhies agreed to perform its contractual obligations for Enterprise's benefit.

In 2019, Dallas Theriot sued Enterprise in Texas for injuries he sustained while working as a relief captain on an Enterprise vessel. Theriot alleged that he was injured when he sat in a newly installed captain's chair, which gave way "suddenly" and "without warning," causing him to fall backward and strike his head and neck. Voorhies had obtained the chair from H.O. Bostrom Company, the manufacturer, and supplied it to Enterprise. Enterprise investigated the incident and concluded the chair disconnected from its stand because the hardware delivered with the chair by H.O. Bostrom to Voorhies and then by Voorhies to Enterprise was the wrong size.

Under maritime law, an injured seaman has three potential claims against his employer: (1) a Jones Act negligence claim, (2) a claim that the ship was unseaworthy, and (3) a claim for maintenance and cure. Theriot asserted all three claims against Enterprise. He alleged that Enterprise was negligent because, among other things, it failed to:

4

- maintain, inspect, or repair the vessel's equipment;

- properly assemble the chair at issue;

- provide and maintain a safe work environment;

- adequately supervise or train its employees;

- follow its own safety rules, policies, and regulations;

- maintain safe mechanisms for work on the vessel; and

- operate the vessel in a safe and proper manner.

Theriot also alleged that Enterprise's vessel was unseaworthy because he "did not have adequate equipment to perform his duties because the chair [he] was sitting on collapsed without warning." Finally, Theriot alleged that he was entitled to maintenance and cure because he was injured while working as a seaman.

Theriot also sued H.O. Bostrom and Voorhies, alleging that they had a duty to provide correct hardware for the chair and that their failure to do so was not only negligent but also a design, manufacturing, or marketing defect. As to Voorhies, Theriot further alleged breaches of implied and express warranties.

Enterprise tendered its defense and indemnity to Voorhies under the Supply Agreement and the Assignment. Enterprise also sought coverage and a defense under Voorhies's insurance policies as an additional insured. Voorhies refused the tender, and Enterprise filed a third-party complaint asserting a breach-of-contract

crossclaim against Voorhies.[1] Relevant here, Enterprise alleged that the Supply Agreement obligated Voorhies to indemnify and defend Enterprise against Theriot's claims and that Voorhies had "materially breached the Supply Agreement and the Assignment" by "failing to comply with the scope and terms of the Agreements" and "providing the defective chair."

Both parties moved for partial summary judgment on Enterprise's breach-of-contract crossclaim, asserting different interpretations of the Supply Agreement's indemnity provision. Enterprise argued that it was entitled to judgment as a matter of law because Voorhies promised to indemnify Enterprise for all claims related to, connected with, or arising out of the Supply Agreement, which included Theriot's lawsuit. Enterprise requested that the trial court grant its summary-judgment motion and award attorney's fees for both Theriot's lawsuit and the contract crossclaim against Voorhies.

Voorhies argued that its defense and indemnity obligation extended only to the use of the Premises, not to supplying a captain's chair. Voorhies asserted that it simply served as a middleman for Enterprise to obtain supplies for its vessels:

---

[1] Enterprise asserted several other crossclaims that are not before us, including for breach of the contractual insurance obligations. Although Enterprise argued below that it was entitled to coverage and a defense as an additional insured, it has not carried that contention forward on appeal. Enterprise's appellate arguments rest exclusively on the Supply Agreement's indemnity provision.

[It] leased [Enterprise's] warehouse building on [Enterprise's] property[] and had two . . . employees working on site. [Enterprise] directed Voorhies to order supplies and then [Enterprise] retrieved the supplies from its own warehouse. . . . Voorhies does not open the boxes shipped to [it], nor does [Enterprise] expect [Voorhies] to open and inspect [the boxes]. Because of Voorhies'[s] occupancy of the building through its lease, the [Supply Agreement] obligates Voorhies to defend and indemnify [Enterprise] for damage to the building, or claims relating to the building. However, the parties never intended for Voorhies to defend and indemnify [Enterprise] for claims such as [Theriot's] . . . .

(Footnotes omitted.) Construing the indemnity provision in the broad manner asserted by Enterprise would, according to Voorhies, lead to absurd consequences.

The trial court denied Enterprise's motion, granted Voorhies's motion, and dismissed Enterprise's breach-of-contract crossclaim with prejudice. The trial court then severed the contract claim from Theriot's lawsuit, making its summary-judgment rulings final and appealable.

### Standard of Review

Although the Supply Agreement calls for the application of Louisiana law, we apply Texas procedural law. *Nexen, Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 417 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As a procedural matter, when, as here, both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *E.g.*, *Gilbert Tex. Constr., L.P. v.*

7

*Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Each party must carry its own burden to establish its entitlement to summary judgment by proving all the elements of the claim or defense; neither can prevail just because the other side failed to meet its burden. *See Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 208 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *CU Lloyd's of Tex. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998)).

## Indemnity

Enterprise and Voorhies moved for summary judgment on the same issue, both seeking a declaration on whether Voorhies had to indemnify and defend Enterprise. Enterprise contends that the trial court erred in denying its summary-judgment motion and instead granting Voorhies's motion.

### A. Louisiana rules of contract construction

The interpretation of a contractual indemnity provision is a question of law. *See Boykin v. PPG Indus., Inc.*, 987 So.2d 838, 842 (La. Ct. App. 2008). Voorhies's indemnity obligation must be determined under Louisiana law because of the Supply Agreement's choice-of-law provision. Language in an indemnity agreement dictates the parties' obligations. *La. United Bus. Ass'n Cas. Ins. Co. V. J & J Maint., Inc.*, 328 F. Supp. 3d 563, 569 (W.D. La. 2018); *see also Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009) (applying Louisiana law). Indemnity provisions are construed according to the general rules of contract interpretation. *Berry v. Orleans*

*Par. Sch. Bd.*, 830 So.2d 283, 295 (La. 2002) (citing LA. CIV. CODE arts. 2045–57). As in Texas, Louisiana courts seek to give effect to the parties' intent. *See Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 285 (5th Cir. 2019) (citing LA. CIV. CODE art. 2045).

Courts begin by examining the contract's words. *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So.3d 187, 192 (La. 2013). Words and phrases must be given their plain, ordinary, and generally prevailing meaning, unless they have been ascribed a technical meaning. *See id.*; LA. CIV. CODE art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Ortiz v. MeadWestvaco Corp.*, 274 So.3d 158, 165 (La. Ct. App. 2019) (citing LA. CIV. CODE art. 2050). None should be construed separately at the expense of disregarding others. *2700 Bohn Motor, LLC v. F.H. Myers Constr. Corp.*, 338 So.3d 500, 508 (La. Ct. App. 2022) (citing LA. CIV. CODE art. 2050).

If a contract does not lead to absurd consequences, it will be enforced as written. *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000) (citing LA. CIV. CODE art. 2046); *see also Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003) (courts may not alter contract's unambiguous terms under guise of contractual interpretation). But when the words of a contract lead to absurd consequences, a

court may determine the parties' common intent in other ways. *Gottsegen v. Hart Prop. Mgmt., Inc.*, 820 So.2d 1138, 1140–41 (La. Ct. App. 2002).

**B.     Voorhies's duty under the contractual indemnity clause**

Here, as is often true in contract-interpretation cases, both sides say the meaning of the Supply Agreement's indemnity provision is clear, yet they say it means different things. Enterprise interprets the Supply Agreement's indemnity provision broadly and contends the trial court erred by agreeing with Voorhies that only claims relating to Voorhies's use of the Premises fall within its scope. In support of its broader interpretation, Enterprise emphasizes this indemnity language:

> Voorhies shall protect, defend, indemnify, and hold harmless [Enterprise] . . . from any and all claims, demands and/or causes of action of any nature or kind, including but not limited to any claims for personal injuries . . . brought by any person or entity ***which are in any way related to or connected with or arise out of this Agreement and/or Voorhies'[s] use or occupancy of the Premises***, whether or not caused in whole or in part by active, passive, sole or concurrent negligence, strict liability or other fault or condition (preexisting or otherwise) attributable to [Enterprise] . . . .

(Emphasis added.) According to Enterprise, "and/or" expresses the parties' intention for the indemnity provision to be read disjunctively and conjunctively, i.e., to mean "A, B, or both." Thus, the indemnity provision requires Voorhies to defend and indemnify Enterprise for three categories of claims: claims related to, connected with, or arising out of (1) the Supply Agreement, (2) or Voorhies's use or occupancy of the Premises, (3) or both. And Voorhies's interpretation limiting its indemnity

obligation to the second category of claims related to building use effectively reads "this Agreement and/or" out of the Supply Agreement and so is too narrow.

Voorhies responds that Enterprise's interpretation improperly isolates the indemnity provision and disregards the rest of the Supply Agreement. Voorhies points to the paragraph right before the indemnity provision providing that:

> Voorhies will occupy and use the Building and Premises at its own risk. Without limitation of any other provision herein, [Enterprise] . . . shall not be liable for any injuries to any person or damages to property from any cause whatsoever, whether owing to the Building or any part thereof, or any appurtenance thereof, being in need of repair or owing to the happening of any accident in or about the Building or the Premises or owing to any act of neglect of Voorhies or of any employee of Voorhies or visitor to the Building. Without limitation, this provision shall apply to injuries and damage caused by nature, rain, flood, hurricane or tropical storm, snow, ice, wind, frost, water, steam, gas, or odors in any form or by the bursting or leaking of windows, doors, walls, ceilings, floors, pipes, gutters, other fixtures; and to damage caused by fixtures, furniture, equipment, and the like situated at the Premises, whether owned by Voorhies or others.

According to Voorhies, this paragraph lists the types of claims that fall within the indemnity guarantee, including certain personal injuries, acts of nature, and property damage. The indemnity provision then defines the nature of the obligation for such claims, specifically referencing "Voorhies's use or occupancy of the premises." Voorhies asserts that reading these two paragraphs together, as intended, "and/or" relates only to:

- those things listed in the first paragraph—personal injuries and property damage caused by "nature, rain, flood, hurricane or tropical storm, snow, ice, wind, frost, water, steam, gas, or odors in any form or by the bursting

11

or leaking of windows, doors, walls, ceilings, floors, pipes, gutters, other fixtures; and . . . damage caused by fixtures, furniture, equipment, and the like situated at the Premises, whether owned by Voorhies or others"; or

- Voorhies's use of the Building or Premises.

Voorhies urges that Enterprise's broader interpretation would have an absurd consequence—Voorhies, a non-manufacturing distributor of third-party products, would have to provide a defense and indemnity for all products sold to Enterprise from 2009 on, without limitation.

While we agree with Voorhies that the indemnity provision cannot be read in isolation, *see* LA. CIV. CODE art. 2050, we do not agree that its application is so narrow when the Supply Agreement is read as a whole. Voorhies correctly asserts that the first paragraph under the indemnity heading limits Enterprise's liability by stating that it shall not be liable for personal injury or property damage "owing to" three things:

- a condition of the Building or any part or appurtenance of it;
- "any accident in or about the Building or Premises"; or
- "any act of neglect" or Voorhies, Voorhies's employee, or a visitor to the Building.

And it clarifies that these three things include, "without limitation," (1) injuries and damages caused by the enumerated acts of nature or the "bursting or leaking of windows, doors, walls, ceilings, floors, pipes, gutters, other fixtures," and

12

(2) damage caused by "fixtures, furniture, equipment, and the like situated at the Premises, whether owned by Voorhies or others."

But reading the indemnity provision to include only those things would effectively read words out of the Supply Agreement. The indemnity provision expressly covers claims related to, connected with, or arising out *"**this Agreement and/or Voorhies'[s] use or occupancy of the Premises**."* (Emphasis added.) In the contract recitals, "Agreement" is defined as a reference to the Supply Agreement itself. Voorhies's interpretation ignores that reference and the later hybrid "and/or." "And/or" has a generally prevailing meaning: it is commonly understood to mean the one or the other or both. *See State v. Dudley*, 106 So. 364, 365 (La. 1925); *see also* LA. CIV. CODE art. 2047. Nearly a century ago, the Louisiana Supreme Court observed:

> The expression *and/or* is quite frequently used in contracts . . . . When used in a contract, the intention is that the one word or the other may be taken accordingly as the one or the other will best effect the purpose of the parties as gathered from the contract taken as a whole. In other words, such an expression in a contract amounts in effect to a direction to those charged with construing the contract to give it such interpretation as will best accord with the equity of the situation, and for that purpose to use either 'and' or 'or' and be *held down to neither*.

*Dudley*, 106 So. at 365; *accord* "And/or," MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/and%2For (defining "and/or" as "a function word to indicate that two words or expressions are to be taken together or individually"); ANTONIN SCALIA & BRYAN A. GARNER, *Reading Law: The*

13

*Interpretation of Legal Texts* 125 (2012) ("The literal sense of and/or is 'both or either,' so that A and/or B means (1) 'A,' (2) 'B,' or (3) 'both A and B.'").

Giving "and/or" its generally prevailing meaning imposes defense and indemnity obligations on Voorhies for claims related to, connected with, or arising out of: (1) the Supply Agreement, (2) Voorhies's use or occupancy of the Premises, or (3) both the Supply Agreement and Voorhies's use or occupancy of the Premises. That meaning tracks the Supply Agreement as a whole.

Voorhies contends that the Supply Agreement as a whole calls for a narrow interpretation of the indemnity provision because the use and occupancy of the Building and Premises is the essence of the Supply Agreement. But, as Enterprise points out, the Supply Agreement is more than a lease agreement. Its titular purpose is to facilitate the supply of products from Voorhies to Enterprise. Its scope includes "eliminat[ing] the need for [Enterprise] to account for, procure, and replenish its inventory of the subject products." And to that end, the Supply Agreement identifies some product categories.[2] It also provides for obtaining, replenishing, and tracking inventory; pricing and minimum sales returns; and warehouse staffing. In addition, the Supply Agreement includes Voorhies's warranty for not just "on-time delivery" but also "expertise along with product manufacturers." Voorhies's use and

---

[2]    Although a captain's chair or furniture is not included on the product list, the list is expressly non-exclusive. And there is no dispute that the captain's chair at issue was procured by Voorhies and sold to Enterprise under the Supply Agreement.

occupancy of the Building serves the same purpose. Reading the Supply Agreement as a whole requires us to consider this purpose and these provisions, not just those related to the Building and Premises.

That the parties intended the broad indemnity asserted by Enterprise is also supported by the other words in the indemnity provision. Few words restrict the indemnity provision's scope. It expressly applies not just to claims but to "any and all claims, demands, and/or causes of action of any nature or kind." And in describing the connection required for indemnifiable "claims, demands, and/or causes of action," the indemnity provision again uses broad language requiring only that they be in "any way related to or connected with or aris[ing] out of."

Voorhies's narrower interpretation would require us not only to ignore the broad language in the indemnity provision but also to impermissibly read out of the clause the phrase "this Agreement **and/or**" or construe it to mean only "this Agreement **and** Voorhies'[s] use or occupancy of the Premises." This would give effect to only part of the indemnity provision and respect only part of the Supply Agreement's purpose. We decline to do so. "While indemnity may only be found where it is clearly intended, that rule does not require us to adopt a stilted reading of the contract to avoid finding indemnity." *Rodrigue v. LeGros*, 563 So.2d 248, 257 (La. 1990).

We disagree that the Supply Agreement's insurance requirements mandate a different interpretation. It is no surprise that Voorhies would have to insure the Building and its contents from loss given the other requirements for its use and occupancy of the Building and Premises. But the insurance requirement does not undercut a broader interpretation of the indemnity provision. Insurance and indemnity obligations are distinct. *See Morella v. Bd. of Comm'rs of Port of New Orleans*, 888 So.2d 321, 325 (La. Ct. App. 2004).

We also disagree that a broad interpretation of the indemnity provision leads to absurd consequences, particularly given other provisions of the Supply Agreement that lend predictability to Voorhies's costs. The Supply Agreement provides for Voorhies's free use of the Building and Premises. It also ensures Voorhies will achieve a minimum standard net return each month:

> For the [supply branch] to be viable, a minimum standard net return has to be achieved each month. This net return is based on a minimum sales dollar amount per month with a gross profit margin of 15%. (See attachment 1, branch expenses). If the sales dollars are not reached, a bill back representing Voorhies'[s] expenses not covered by the minimum standard net return will be made which [Enterprise] agrees to split with Voorhies on a 50/50 equal basis.

> Sales Dollars Necessary per month based on Attachment 1
> $175,000.00
> Sales Dollars Annually
> $2,100,000.00

Agreeing to defend and indemnify Enterprise for claims related to, connected with, or arising out of the products it sells under the Supply Agreement may prove to be

an unwise business decision; but considering these other provisions, it is not objectively absurd. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 991 (5th Cir. 1990) (applying Louisiana law and concluding that "although a business decision may be unwise, imprudent, risky, or speculative, it is not necessarily 'absurd'"). Parties may not "escape the unfortunate and unexpected, though not objectively 'absurd,' consequences of a contract by subsequently characterizing their consequences as 'absurd.'" *Id.*

We conclude the Supply Agreement's indemnity provision does not limit Voorhies's defense and indemnity obligations to claims related to, connected with, or arising from Voorhies's use or occupancy of the Premises. Instead, the plain, ordinary, and generally prevailing meaning of the words used in the Supply Agreement, considered as a whole, express the parties' intention for Voorhies to defend and indemnify Enterprise for:

- claims in any way related to, connected with, or arising out of the Supply Agreement;

- claims in any way related to, connected with, or arising out of Voorhies' use or occupancy of the Premises; and

- claims in any way related to, connected with, or arising out of both the Supply Agreement and Voorhies's use or occupancy of the Premises.

We therefore hold the trial court erred by granting Voorhies's summary-judgment motion based on a narrower interpretation of the Supply Agreement's indemnity provision. Whether the trial court also erred by denying

17

Enterprise's summary-judgment motion depends on whether, as Enterprise contends, the summary-judgment record establishes that Theriot's claims against Enterprise are claims in any way related to, connected with, or arising out of the Supply Agreement. Accordingly, we turn to that question.

## C.     Theriot's underlying suit

The indemnity provision provides indemnity for costs, including attorney's fees, from personal injuries "in any way related to," "connected with," or "aris[ing] out of" the Supply Agreement or Voorhies's use or occupancy of the Premises or both, "whether or not caused in whole or in part by active, passive, sole or concurrent negligence, strict liability or other fault or condition (preexisting or otherwise) attributable to [Enterprise]." Louisiana courts have applied a "but for" causation test to indemnity provisions containing "arising out of" language. *See Kan. City S. R. Co. v. Pilgrim's Pride Corp.*, Civ. Action No. 06-0003, 2010 WL 1293340, at *6 (W.D. La. Mar. 29, 2010); *Perkins v. Rubicon, Inc.*, 563 So.2d 258, 259–60 (La. 1990) ("arising out of" language in an indemnity provision requires "a connexity similar to that required for determining cause-in-fact: Would the particular injury have occurred but for the performance of work under the contract?").

But "aris[ing] out of" is only one of three triggering terms in the indemnity provision. The other terms are susceptible to broader meanings. For instance, Louisiana courts have given a broad construction to "in connection with" language,

18

noting it means "being related to or associated with, but not the primary or only purpose of." *Poole v. Ocean Drilling Expl. Co.*, 439 So.2d 510, 512 (La. Ct. App. 1983); *see also Kan. City S. R. Co.*, 2010 WL 1293340, at *6.

In the underlying suit, Theriot sought recovery against Enterprise for negligence, unseaworthiness, and maintenance and cure under the Jones Act. The unseaworthiness claim and the maintenance-and-cure claim arise under general maritime law, while the negligence claim is statutory. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995). "Historically, conceptually, and functionally, the unseaworthiness and Jones Act tort actions are [conjoined]." David W. Robertson, *Punitive Damages in U.S. Maritime Law: Miles, Baker, and Townsend*, 70 LA. L. REV. 463, 464 (2010). Both compensate a seaman for injuries. Applying the indemnity provision's "connected with" language as "being related to or associated with," as broadly interpreted by the Louisiana courts, we conclude that these two claims fall within the scope of the indemnity provision. They rest on Theriot's allegation that, among other things, Enterprise provided unsafe equipment on its vessel. And Enterprise presented unrebutted evidence that Voorhies supplied the captain's chair at issue to Enterprise under the Supply Agreement. Voorhies's corporate representative testified:

> Q.    And I believe it was your testimony that delivering the chair at issue in this [L]awsuit constituted work under this [Supply] [A]greement, correct?

A. Yes.

Q. That Voorhies was performing its duties under this [Supply] [A]greement when it delivered the chair to [Enterprise], right?

A. Correct.

But a different conclusion is required for the maintenance-and-cure claim. "The much older maintenance and cure action does not derive from tort principles and is something like a first cousin to the other two." Robertson, *supra*. It does not compensate for injuries but serves a curative function. *See, e.g.*, *Johnston v. Tidewater Marine Serv.*, No. 96–30595, 1997 WL 256881, at *2 (5th Cir. Apr. 23, 1997) (per curiam) ("A claim for unseaworthiness is compensatory in nature . . . while a claim for maintenance and cure is curative in nature."). A maintenance-and-cure claim "concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001). A shipowner is required "not only to pay for the seaman's maintenance and cure but to take all reasonable steps to make sure that the seaman, when he is injured or becomes sick, receives proper care and treatment." GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY § 6–13, at 310 (2d ed. 1975). A claim for maintenance and cure arises from the relationship between seaman and employer. *Stermer v. Archer-Daniels-Midland Co.*, 140 So.3d 879, 885 (La. Ct. App. 2014). In other words, the maintenance-and-cure claim is not one for "personal injuries, death, or

20

property damage" and thus falls outside the scope of the Supply Agreement's indemnity provision.

Although Enterprise requested rendition of judgment, including an award of attorney's fees, in its favor on its breach-of-contract cause of action in both the trial court and this court, that remedy is not ripe. We have before us only the matter of the indemnity provision's interpretation. Our record includes no determination of Enterprise's costs in the underlying Theriot lawsuit for the covered or non-covered claims, nor is there evidence of Enterprise's attorney's fees. Accordingly, the summary-judgment record does not establish Enterprise's entitlement to judgment as a matter of law, *see* TEX. R. CIV. P. 166a(c). We therefore cannot hold that the trial court erred by denying Enterprise's summary-judgment motion.

## Conclusion

For these reasons, we reverse that part of the trial court's order granting Voorhies's motion for summary judgment on Enterprise's cause of action for breach of contract, but we affirm the denial of Enterprise's summary-judgment motion. We remand for further proceedings consistent with this opinion.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

21