832 So.2d 438 (2002)
E. Michael O'BRYAN, M.D.
v.
LOUISIANA PATIENT'S COMPENSATION FUND OVERSIGHT BOARD.
No. 2001 CA 0728.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
Rehearing Denied January 2, 2003.
*439 Richard L. Weil, New Orleans, for Plaintiff/Appellant E. Michael O'Bryan, M.D.
Larry M. Roedel, David A. Woolridge, Jr., Baton Rouge, for Defendant/Appellee Louisiana Patient's Compensation Fund Oversight Board.
Before: FITZSIMMONS, GUIDRY, PETTIGREW, DOWNING and LANIER,[1] JJ.
DOWNING, J.
Dr. E. Michael O'Bryan appeals an adverse judgment entered pursuant to a petition for declaratory judgment where the trial court entered judgment in favor of the Louisiana Patients' Compensation Fund Oversight Board (Oversight Board) on all issues. The trial court declared that several of the Oversight Board's regulations addressing malpractice liability insurance coverage were valid and enforceable. For reasons that follow, we affirm in part and reverse in part.

*440 FACTS AND PROCEDURAL HISTORY

Dr. Michael O'Bryan filed an action for declaratory judgment against the Oversight Board in August 1997 claiming that the Oversight Board had promulgated rules in direct contravention of statutory authority to his detriment. He asked the court to resolve several issues surrounding the requirement that he post financial security to be insured under the Louisiana Patients' Compensation Fund ("PCF"). These issues included the type of security required and the type of insurance coverage, claims made or occurrence, the Patients' Compensation Board is required to offer.
On November 13, 2000 the trial court entered judgment in favor of the Oversight Board. On appeal this court noted that the judgment did not specifically address the issues raised in the declaratory judgment action. On April 8, 2002 we ordered the parties to confect a new judgment in proper form to present to the trial court, which they did. This judgment was signed on April 10, 2002, and the record was supplemented with it. The amended judgment declares: (1) that self-insured financial devices mandated by LSA-R.S. 40:1299.42A(1) would not be proof of financial responsibility for claims that arose before a health care provider became self-insured; (2) that the Oversight Board had authority to require a health care provider to purchase a tail or extended reporting endorsement from his previous malpractice insurance carrier to avoid potential gaps in Patients' Compensation Fund coverage; (3) that self-insured health care providers do not have the right to purchase claims-made coverage from the PCF; (4) that the Oversight Board has authority to charge a PCF tail surcharge to health care providers who had previously purchased claims-made coverage from the PCF and who elect to purchase self-insured coverage; and (5) that self-insured health care providers who submit proof of financial responsibility as mandated by LSA-R.S. 40:1299.42A(1) should not be afforded PCF coverage for acts of medical malpractice alleged to have been committed during the previous claims-made period(s) but which claims are filed after such proof of financial security is deposited with the Oversight Board.
Dr. O'Bryan appealed assigning six assignments of error:
1. The trial judge erred in finding that financial security for a self insured as required in LSA-R.S. 40:1299.41A(1) and 40:1299.42E is not available to be proof of financial security for claims arising prior to the filing of the self insured financial securitythe only test appropriate being that the deposited financial security be available to pay the claims in question;
2. The trial judge erred in finding that the PCF Oversight Board could force a health care provider to purchase a tail from his previous malpractice carrier in order to satisfy proof of responsibility;
3. The trial judge erred in finding that self-insured health care providers could only purchase occurrence coverage from the PCF;
4. The trial judge erred in finding that the PCF could require health care providers who were already members of the PCF to switch coverage from claims made to occurrence simply because the health care provider decided to substitute one form of financial security for another;
5. The trial judge erred in finding that the PCF had the right to require already enrolled health care providers to pay a tail premium when the health care provider was still a duly *441 enrolled member of the PCF and was only switching security devices as allowed by the statute;
6. The trial judge erred in ruling that a health care provider would not have coverage with the Fund for claims filed prior to the posting of financial security.

LEGAL PRECEPTS
The Oversight Board has authority in accordance with the Administrative Procedure Act (APA) "to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed" under Part XXIII of Title 40, Chapter 5 of the Louisiana Statutes. This part establishes and governs the Patient's Compensation Fund. LSA-R.S. 40:1299.44D(3). Under the APA, declaratory orders and rulings of an agency or board shall have the same status as agency decisions or orders in adjudicated cases. LSA-R.S. 49:962. The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located.
At issue in particular are the following statutory sections of LSA-R.S. 40:1299.42 and LSA-R.S. 40:1299.44:
LSA-R.S. 40:1299.42. Limitation of recovery
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
....
E. (1) Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider, or in the event the health care provider is self-insured, proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars in money or represented by irrevocable letters of credit, federally insured certificates of deposit, bonds, securities, cash values of insurance, or any other security approved by the board. In the event any portion of said amount is seized pursuant to the judicial process, the self-insured health care provider shall have five days to deposit with the board the amounts so seized. The health care provider's failure to timely post said amounts with the board shall terminate his enrollment in the Patient's Compensation Fund.
LSA-R.S. 40:1299.44. Patient's compensation fund
(A)(2)(f) The surcharge for self-insureds shall be the amount determined by the board in accordance with regulations promulgated under the Administrative Procedure Act and in accordance with the rate set by the Louisiana Insurance *442 Rating Commission to be the amount of surcharge which the health care provider would reasonably be required to pay were his qualification based upon filing a policy of malpractice liability insurance. (Footnote omitted.)

DISCUSSION
Dr. O'Bryan's arguments mainly allege that the Oversight Board exceeded its statutory authority in promulgating certain regulations[2] consistent with the trial court's judgment. The issues decided by the trial court on declaratory judgment stemmed from these regulations, particularly LAC 37:111 § 715C.2, which provides in pertinent part:
When a health care provider who had previously purchased claims-made coverage from the Fund elects to purchase self-insured coverage from the Fund, he shall not have coverage afforded for any claims arising from acts or omissions occurring during the Fund's claims-made coverage but asserted after the termination of the claims-made coverage unless he evidences financial responsibility for those claims and pays the surcharge applicable to fund tail coverage for the corresponding claims-made period(s).
Pursuant to its promulgated regulations, the Board defined self-insurance as "occurrence coverage" and imposed financial responsibility and surcharge requirements consistent with its understanding of this term. The Board's definition and understanding of statutorily permissible self-insurance are at issue in this appeal.

Proof of Financial Security
We first look at the financial security prong of LSA-R.S. 40:1299.42A, which provides that proof of responsibility shall be provided according to LSA-R.S. 40:1299.42E. This subsection provides in pertinent part that, "[f]inancial responsibility of a [self-insured] health care provider under this Section may be established only by ... proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars ...."
However, "[a]ny lapse in the malpractice liability insurance policy filed as proof of financial responsibility, through either its effective period or its form (occurrence or claims-made), renders the health care provider unqualified during the period of the lapse." Abate v. Healthcare Intern., Inc., 560 So.2d 812, 817 (La.1990). The Oversight Board here asserts that if public health providers are not required to post tail policies to cover acts of malpractice for the period covered by their claims-made policy, they cannot show that they were qualified health care providers for those claims which arose before becoming self-insured, but which claims are not filed until after they became self-insured. We agree.
Louisiana Revised Statute 40:1299.44 requires one form of proof of financial responsibility for health care providers who are insured by a policy of medical malpractice liability and another for those who are self-insured. We conclude that a reasonable interpretation of the PCF's statutory financial responsibility requirements is that a health care provider who desires to retain full qualification for those incidents of malpractice that occurred while he or she was covered by a claims-made liability policy must provide tail coverage to remain qualified. In *443 Abate, the supreme court considered the facts that similar circumstances might expose the PCF to tort claims for which it had not received surcharge payments and would increase the possibility of the PCF being diminished or exhausted in the period when claims became final. Abate, 560 So.2d at 818. See also Clark v. Ransom, 595 So.2d 710, 712 (La.App. 5 Cir.1992) where the court concluded that a health care provider was not covered under the Medical Malpractice Act because he was not qualified under the Act when the claim was made even though he was qualified at the time the alleged tortious conduct occurred. Accord Williams v. Golden, 611 So.2d 713 (La.App. 4 Cir.1992).
We recognize the Board's general authority to promulgate the required standards and forms of required financial responsibility insofar as they are consistent with statutory authority. LSA-R.S. 40:1299.44D(2)(a)(b)(ii) provides that "[t]he board shall be responsible, and have full authority under law, for the management, administration, operation and defense of the fund in accordance with the provisions of this Part." It further provides that "the board shall have the authority, to the extent not inconsistent with the provisions of this Part, to ... establish and define the standards and forms of financial responsibility required of self-insured health care providers ... as a condition to initial and continuing enrollment with the fund."
However, LSA-R.S. 40:1299.42E(1) requires as proof of financial responsibility only that a self-insured health care provider deposit with the board $125,000 in money or represented by the appropriate security device. It requires nothing further. Because the rules promulgated by the board require more proof of financial responsibility, they are inconsistent with the provisions of the statute.
Accordingly, we find merit in Dr. O'Bryan's second and fifth assignments of error. We conclude the trial court committed legal error in declaring the following: (a) that the Oversight Board had authority to require a health care provider to purchase a tail or extended reporting endorsement from his previous malpractice insurance carrier when the health care provider has changed from a "claims-made" policy to a self-insured "occurrence policy" to avoid potential gaps in Patients' Compensation Fund coverage; and (b) that the Oversight Board has authority to charge a PCF tail surcharge to health care providers who had previously purchased claims-made coverage from the PCF and who elect to purchase self-insured coverage. These declarations are reversed.
The trial judge correctly analyzed the problem as follows:

Abate vs. Healthcare International, Inc., 560 So.2d 812 (La.1990) is of extreme importance in this DJA. Therein, the Louisiana Supreme Court held that a HCP must be qualified with the PCF both on the date of the alleged medical malpractice and on the date the claim is filed for the alleged tortious conduct to be covered by the Medical Malpractice Act. Therefore, for the employee HCPs of Dr. O'Bryan to be qualified for those claims which arose before they become self-insured, but which claims are not filed until after they become self-insured, then the HCPs must have paid the proper surcharge and filed the proper proof of financial responsibility with the PCF Oversight Board both on the date of the alleged malpractice and on the date that the claim was filed.

With respect to whether the HCP is qualified on the date that the claim is filed (during the self-insured period), the approved security device filed with the PCF Oversight Board will be proof of *444 financial responsibility and, assuming that the "proper surcharge" has been paid, then the HCP should be deemed qualified on the date that the claim was filed. However, with respect to whether the HCP was qualified on the date of the alleged malpractice (prior to the self-insured period), PCF qualification is in doubt since it must be determined whether the HCP has filed proof of financial responsibility with the PCF Oversight Board. Clearly, the malpractice liability insurance policy does not evidence proof of financial responsibility on the date of the alleged malpractice since the claim was not filed during the term of the malpractice liability policy and the insurer would not provide coverage for the claim unless a tail/extended reporting endorsement was purchased by the HCP. Therefore, the issue becomes whether the self-insured financial security device will stand good for and as proof of financial responsibility for the alleged malpractice that occurred when the HCP had an underlying malpractice liability policy.
We only hold here that the Oversight Board may not require more than its statutory authority. If the health care provider chooses not to obtain a tail or extended reporting endorsement then as to those acts of malpractice where a claim is made after qualification as a self-insured for an occurrence before self-insurance, where the health care provider was qualified under a claims made policy, the health care provider would not be covered under the Medical Malpractice Act for that claim. He would, however, be covered for alleged acts of malpractice occurring during the time he was self-insured. The choice of tail coverage in this instance statutorily belongs to the health care provider.
We, however, agree that the Oversight Board's Rules and Regulations at issue on Dr. O'Bryan's first and sixth assignments of error do not exceed their statutory authority. We conclude that Dr. O'Bryan's first and sixth assignments of error lack merit. We conclude the trial court committed no legal error in declaring the following: (a) that self-insured financial devices mandated by LSA-R.S. 40:1299.42A(1) would not be proof of financial responsibility for claims that arose before a health care provider became self-insured; and (b) that self-insured health care providers who submit proof of financial responsibility as mandated by LSA-R.S. 40:1299.42A(1) should not be afforded PCF coverage for acts of medical malpractice alleged to have been committed during the previous claims-made period(s) but which claims are filed after such proof of financial security is deposited with the Oversight Board. The promulgated rules and regulations addressing these issues appear to be fair, reasonable and tailored to the specific need of the PCF. We affirm the trial court on these declarations.

Surcharges according to LSA-R.S. 40:1299.44
The second requirement for a health care provider's qualification under the PCF is that the health care provider pay the assessed surcharge according to LSA-R.S. 40:1299.44. Regulation LAC 37.III § 715.C.2 requires qualified health care providers who switch from claims-made insurance to being self-insured to pay occurrence surcharge rates for coverage. Dr. O'Bryan argues that this regulation violates the statutory requirements of LSA-R.S. 40:1299.44. Dr. O'Bryan argues that LSA-R.S. 40:1299.44A(2)(f) allows the self-insured health care provider to choose the "form of coverage just as if he were purchasing commercial insurance."
We conclude that Dr. O'Bryan is reading provisions into the statute that do not exist. While LSA-R.S. *445 40:1299.44A(2)(f) does base the surcharge on what "the health care provider would reasonably be required to pay were his qualification based upon filing a policy of malpractice liability insurance," this language does not express any intent that the health care provider can choose the type policy or coverage he can select. Accordingly, the Oversight Board is not prohibited from promulgating rules in this area so long as the rules do not exceed statutory or other legal authority.
Dr. O'Bryan argues only that the rules requiring him to purchase and maintain occurrence coverage rather than claims-made coverage contravene the statutory scheme. He does not argue, and we do not consider, whether these regulations abuse the Oversight Board's discretion or are otherwise unlawful. The promulgated rule equates self-insurance with occurrence coverage. We hold that the challenged rule requiring Dr. O'Bryan to pay a reasonable surcharge, no matter how labeled, is permissible if done within statutory guidelines.
However, insofar as the Oversight Board attempts to use the definition of occurrence coverage to require Dr. O'Bryan to purchase any tail coverage for alleged acts of malpractice committed prior to his becoming self-insured to maintain his qualification under the PCF, it exceeds its statutory authority and such regulation is invalid.
The trial court declared that self-insured health care providers do not have the right to purchase claims-made coverage from the PCF. We affirm this declaration with the proviso that the Oversight Board cannot require that Dr. O'Bryan purchase any tail coverage for alleged acts of malpractice committed prior to his becoming self-insured to maintain his qualification under the PCF as such is not statutorily required.
Accordingly, we affirm the trial court's declaration that self-insured health care providers do not have the right to purchase claims-made coverage from the PCF. We note, however, that Dr. O'Bryan's third and fourth assignments of error have partial merit.

CONCLUSION
For the reasons outlined above, we affirm the judgment of the trial court in part and reverse in part. We remand this matter for entry of a judgment consistent with this opinion. Costs of this appeal are taxed equally to Dr. O'Bryan and to the Oversight Board.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTION.
GUIDRY and PETTIGREW, JJ., concurs.
FITZSIMMONS, J., dissents in part and assigns reasons.
FITZSIMMONS, J., dissenting, in part, with reasons.
I respectfully disagree with the majority's partial reversal of the trial court declaratory judgment. Louisiana Revised Statute 40:1299.42E establishes two separate procedures to establish financial responsibility depending on the type of medical malpractice insurance coverage a health care provider maintains. If the provider seeks to avail himself of the protection afforded under malpractice liability insurance, he must file "with the [Patient's Compensation Fund Oversight] board proof that the provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim." Id. Alternatively, if the health care provider is self-insured, he must provide "proof of financial responsibility *446 by depositing with the board one hundred twenty-five thousand dollars in money or represented securities, cash values of insurance, or any other security approved by the board." Id. The provisions of R.S. 40:1299.41 et sequitur, however, do not address alterations of coverage from a "claims made" liability insurance policy to self-insured "occurrence" coverage. Nor does the statute provide guidance for the inclusion of "gap" or "tail" coverage; this form of coverage forms the raison d'etre of the case under review.
The Patient's Compensation Fund Oversight Board is empowered with the authority to "[e]stablish and define the standards and forms of financial responsibility required of self insured health care providers, and the standards and forms of malpractice liability insurance policies issued by admitted insurance companies ...." La. R.S. 40:1299.44D(2)(ii). It also possesses governance "to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibility conferred and imposed on the board by this Part." La. R.S. 40:1299.44D(3). In other words, the board has authority to make the fund financially feasible. This is for the protection of all of the volunteer participants.
In 1997, the board promulgated LAC 37:III, Chapter 5, § 505 and § 507. This rule addresses the issue of continuing ("gap" or "tail") health care coverage, provided the health care provider meets the premium payment conditions of the underlying coverage. Subsection E of § 505 indicates the following:
E. The insurance coverage required by this Rule to demonstrate the requisite financial responsibility for qualification with the Fund shall be deemed to be continuing without a lapse in coverage by the Fund, provided that the health care provider meets the premium payment conditions of the underlying overage. (Underlining supplied.)
Thereafter, § 507E states:
E. To maintain financial responsibility for continuing enrollment or qualification with the Fund, a health care provider shall at all times maintain the unimpaired principal value of the deposit provided for by this Section at not less than $125,000. The value of the health care provider's deposit shall be deemed impaired when any portion is seized pursuant to judicial process. (Underlining supplied.)
Neither the rule, the judgment, or the written reasons for judgment by the district court unilaterally requires a health care provider to purchase "gap" or "tail" coverage in order to obtain "occurrence" based "self-insurance coverage", i.e., for acts committed during the term of the self-insurance coverage. Notwithstanding Dr. O'Bryan's assertions to the contrary and the majority opinion, my interpretation of the court's judgment is that it simply declared that the statutory "security device" does not, additionally, entitle a provider to coverage for the risk of claims that might arise during the previous "claims made" time frame. Moreover, the court found that the board acted within its rule-making authority when it promulgated a rule to allow health care providers the option of purchasing "gap" or "tail" coverage upon the establishment of additional financial security. Finding no error of law in the board's promulgation of said rules requiring additional financial requirements in the event a provider would wish to supplement the standard coverage with "gap" or "tail" coverage, I would affirm the lower court declaratory judgment in all respects.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] The regulations at issue are found in the Louisiana Register at Vol. 23, No.1 (January 20, 1997) and address amendments to the LAC 37:III.Chapters 1, 5, 7 and 9. The amendments concern general provisions, fund enrollment, surcharges and scope of coverage.