978 So.2d 988 (2007)
Carl HOOD
v.
Mark M. COTTER, M.D.
No. 2006 CA 1390.
Court of Appeal of Louisiana, First Circuit.
December 28, 2007.
Writ Granted April 18, 2008.
*989 Normand F. Pizza, Milling Benson Woodward L.L.P., New Orleans, LA, for Defendant-Appellant, Louisiana Medical Malpractice Insurance Co.
David A. Woolridge, Jr., Larry M. Roedel, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, A.L.C., Baton Rouge, *990 LA, for Intervenor-Appellee, Louisiana Patient's Compensation Fund Oversight Board.
Before CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES, and WELCH, JJ.
PARRO, J.
A medical malpractice insurer appeals from the portion of a district court judgment that granted an intervener's motion for summary judgment on an insurance-type coverage issue. For the following reasons, the judgment of the district court is reversed in part and affirmed in part, and this matter is remanded.

Factual Background and Procedural History
Louisiana Medical Malpractice Insurance Company (LAMMICO) provided a claims-made[1] insurance policy to Dr. Mark M. Cotter for the period January 1, 2003, through January 1, 2004. Dr. Cotter also had concurrent claims-made coverage with the Louisiana Patient's Compensation Fund (PCF) during this period. The alleged acts of malpractice toward Carl Hood (Hood) occurred in April 2003 through September 5, 2003. Dr. Cotter voluntarily surrendered his medical license on December 17, 2003, and did not purchase an extended reporting endorsement (tail coverage) from LAMMICO.[2]
Hood filed a complaint with the PCF in February 2004, seeking the appointment of a medical review panel in connection with alleged acts of malpractice that occurred during the policy period. Initially, the PCF notified Hood that Dr. Cotter was a qualified health care provider. However, the PCF subsequently informed Hood that Dr. Cotter did not meet the qualification requirements. Hood then filed suit in district court against Dr. Cotter on April 29, 2004. On February 15, 2005, Hood filed an amending and supplemental petition that added LAMMICO as a co-defendant. LAMMICO then filed an answer and an exception urging the objection of no cause of action based on the fact that Hood's claim had been made after the expiration of the policy period. The PCF Oversight Board (Board) filed a petition of intervention, averring that Dr. Cotter was not at all pertinent times a qualified and enrolled member of the PCF in that he had failed to renew his LAMMICO insurance policy, failed to purchase tail coverage from LAMMICO, and failed to renew his PCF coverage.
Subsequently, LAMMICO filed a motion for a summary judgment, asserting that Dr. Cotter did not have coverage with it for Hood's claim. The alleged lack of coverage was due to Dr. Cotter's failure to honor the conditions of the LAMMICO policy when he surrendered his license, resulting in the termination of the policy, failed to purchase the tail coverage offered by LAMMICO, and failed to qualify under the Louisiana Medical Malpractice Act. LAMMICO's motion also urged that Hood's claim against LAMMICO was filed after the prescriptive period provided for *991 by LSA-R.S. 9:5628. The Board also filed a motion for a summary judgment in which it maintained that Dr. Cotter was not a qualified health care provider when Hood filed his claim, because at that time Dr. Cotter did not have underlying liability coverage and the PCF surcharge had not been paid by or on behalf of Dr. Cotter.
The Board's motion for summary judgment was granted, and LAMMICO's motion was denied.[3] Pursuant to an interim order of this court, the district court judgment was subsequently amended to declare that there was no PCF coverage for the claim made by Hood against Dr. Cotter and to dismiss the Board from the suit with prejudice. LAMMICO's appeal from that portion of the judgment granting the Board's motion for a summary judgment is currently before this court.[4] On appeal, LAMMICO urged that the district court erred in: (1) finding that there was no PCF coverage for Hood's claims, (2) finding LAMMICO provided coverage for Hood's claims, (3) exposing LAMMICO to liability not covered by the policy or contemplated by the parties in derogation of jurisprudence and public policy, and (4) applying contrary standards in determining if there is coverage by LAMMICO and the PCF.

Denial of Motion for a Summary Judgment
In its appeal of the district court's granting of the Board's motion for a summary judgment on the issue of PCF coverage, LAMMICO challenges the district court's denial of its motion for a summary judgment on the issue of coverage under the LAMMICO policy. The denial of a motion for a summary judgment is an interlocutory judgment that is not susceptible to being certified by a trial court as final for purposes of immediate appeal under LSA-C.C.P. art. 1915. See Young v. City of Plaquemine, 04-2305 (La.App. 1st Cir.11/4/05), 927 So.2d 408; Belanger v. Gabriel Chemicals. Inc., 00-0747 (La.App. 1st Cir.5/23/01), 787 So.2d 559, writ denied, 01-2289 (La.11/16/01), 802 So.2d 612. A party's method of review of the denial of a motion for a summary judgment is either on review of an unrestricted final judgment or by an application for supervisory writs. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him in addition to the review of the final judgment being appealed. Judson v. Davis, 04-1699 (La.App. 1st Cir.6/29/05), 916 So.2d 1106, 1112, writ denied, 05-1998 (La.2/10/06), 924 So.2d 167; In re T.A.S., 04-1612 (La.App. 1st Cir.10/29/04), 897 So.2d 136, 139; see Young, 927 So.2d 408. Arguably, the present appeal is restricted to the issue of PCF's coverage for the claims filed by Hood.
Nonetheless, this court has allowed review of the denial of a motion for a summary judgment filed by the appellant in conjunction with its review of the granting of a motion for a summary judgment against the appellant where the issues involved were identical. Dean v. Griffin Crane & Steel, Inc., 05-1226 (La.App. 1st Cir.5/5/06), 935 So.2d 186, writ denied, 06-1334 (La.9/22/06), 937 So.2d 387 (the resolution *992 of both motions involved a determination of the third-party plaintiffs right to contractual indemnification by the third-party defendants); see Louisiana Power and Light Co. v. Slaughter, 04-2361 (La. App. 1st Cir.11/4/05), 917 So.2d 532, 536, writ denied, 06-0217 (La.4/24/06), 926 So.2d 550; Campbell v. Markel American Ins. Co., 00-1448 (La.App. 1st Cir.9/21/01), 822 So.2d 617, 619-20, writ denied, 01-2813 (La.1/14/02), 805 So.2d 204. In the instant case, the issues involved in the granting of a summary judgment in the Board's favor are directly related to the issues presented by LAMMICO's motion for a summary judgment. Therefore, we will consider them to be directly related to the final judgment that granted the Board's motion for summary judgment. See Bennett v. Krupkin, 00-0023 (La.App. 1st Cir.3/28/02), 814 So.2d 681, 685, writ denied, 02-1208 (La.6/21/02), 819 So.2d 338; Hedgepeth v. Guerin, 96-1044 (La. App. 1st Cir.3/27/97), 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983. Accordingly, we find that a review of the issue of LAMMICO's coverage in connection with the instant appeal is appropriate.

LAMMICO's Coverage
Pertinent to our resolution of the issue of LAMMICO's coverage is the case of Hedgepeth, 691 So.2d 1355. The policy in question in Hedgepeth limited the malpractice insurer's coverage to those claims occurring and first made during the policy period. By policy definition, a claim was first made either when the insured first gave written notice to the insurer that a claim had been made or when the insured first gave written notice to the insurer of specific circumstances involving a particular person which may result in a claim. The medical procedure giving rise to plaintiffs' malpractice action in Hedgepeth occurred in October 1985, which was clearly while the policy was in force. The plaintiffs' claim for medical malpractice was initiated on July 23, 1986, against the health care provider and the insurer, and reported to the insurer on August 7, 1986, which dates were outside the policy period. These facts served as the basis for the insurer's motion for summary judgment on the issue of coverage, which was denied by the trial court. Following a trial on the merits, the trial court awarded damages to the plaintiffs against the insurer despite the lack of evidence that the insured had complied with the notice provision of the insurance contract. The insurer appealed contending that the trial court erred in ignoring the unambiguous terms of the "claims made" policy regarding notice. This court agreed. Since the claim in Hedgepeth had not been "first made" during the policy period, this court found that under the language of the liability policy, there was no coverage. Hedgepeth, 691 So.2d at 1359. However, because, under the facts of Hedgepeth, the policy provision effectively reduced the prescriptive period for making a claim against the insurer to less than the statutorily mandated period of LSA-R.S. 22:629, LSA-R.S. 9:5628(A), and LSA-R.S. 40:1299.45, the provision was found to be in violation of the statutory law that prohibits the limiting of a right of action against an insurer to less than one year. Hedgepeth, 691 So.2d at 1364.
Accordingly, those portions of the insurer's "claims made" policy in Hedgepeth, limiting the liability of the insurer to those claims which occurred and were reported while the policy was in force, were found to be unenforceable and without effect with respect to those acts of malpractice that occurred during the policy period for which a claim was filed within one year from accrual of the cause of action and were reported to the insurer within one *993 year from accrual of the cause of action.[5]Hedgepeth, 691 So.2d at 1364.
The facts of this case are similar to those of Hedgepeth in that the alleged acts giving rise to Hood's malpractice action occurred in April 2003 through September 5, 2003, which was clearly while the policy was in force. Hood's claim for medical malpractice was initiated against Dr. Cotter on April 29, 2004, and against LAMMICO on February 15, 2005, which dates were outside the policy period.
Notably, although Hood's claim against Dr. Cotter was filed within one year from the accrual of the cause of action, as in Hedgepeth, LAMMICO was not added as a defendant in that proceeding until more than one year from the date of the acts giving rise to the medical malpractice action. Hood urged that the timely filing of *994 suit against Dr. Cotter, who allegedly was solidarily liable with LAMMICO, was sufficient to satisfy the requirements of Hedgepeth relative to the filing of the claim against LAMMICO within one year from the accrual of the cause of action.
He who conspires with another person to commit an intentional or willful act is answerable in solido with that person for the damage caused by such act. LSA-C.C. art. 2324(A). If liability is not solidary pursuant to LSA-C.C. art. 2324(A), then liability for damages caused by two or more persons shall be a joint and divisible obligation. LSA-C.C. art. 2324(B). Therefore, Hood's assertion that Dr. Cotter and LAMMICO are solidary obligors is inaccurate. Nonetheless, the interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. LSA-C.C. art. 2324(C). Accordingly, the timely filing of Hood's cause of action against Dr. Cotter would also serve as the basis for the timely filing of his cause of action against someone who is jointly liable with Dr. Cotter, such as LAMMICO.[6]
Because the policy provision at issue in this case effectively reduced the prescriptive period for making a claim against LAMMICO to less than the statutorily-mandated period, the policy provision is in violation of the statutory law that prohibits the limiting of a right of action against an insurer to less than one year. See Hedgepeth, 691 So.2d at 1364. Under the rationale of Hedgepeth, that portion of LAMMICO's claims-made policy which limited its liability to those claims that occurred and were reported while the policy was in force, is unenforceable and without effect as to those acts of malpractice that occurred during the policy period for which a claim was filed within one year from accrual of the cause of action and was also reported to the insurer within such time. Therefore, the trial court correctly determined that the LAMMICO policy afforded coverage for Hood's claims.[7]

Qualification of a Health Care Provider
The Louisiana Medical Malpractice Act (MMA), LSA-R.S. 40:1299.41 et seq., confers upon qualified health care providers two major advantages in actions against them for malpractice. Bennett, 814 So.2d at 685. First, the liability of a qualified health care provider for all injuries or death for any one patient may not exceed $100,000, and the total amount recoverable from all defendants (including the PCF) for all malpractice claims for injuries or death for any one patient, exclusive of future medical care and related benefits, may not exceed $500,000, plus interest and costs. LSA-R.S. 40:1299.42(B). Second, no action for malpractice against a qualified health care provider or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. LSA-R.S. 40:1299.47(A); Bennett, 814 So.2d at 685.
Health care providers may take advantage of these benefits only if they "qualify" and only for as long as they remain qualified under the MMA by meeting the statutory *995 requirements of LSA-R.S. 40:1299.42(A), which provides:
To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to La. R.S. 40:1299.44.
(3) For self insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
In O'Bryan v. Louisiana Patient's Compensation Fund Oversight Board, 01-0728 (La.App. 1st Cir.11/8/02), 832 So.2d 438, a health care provider, Dr. Michael O'Bryan, filed an action for declaratory judgment against the Board concerning his obligation to post financial security to be insured under the PCF. Before he became self insured,[8] Dr. O'Bryan was insured pursuant to a claims-made policy. Citing Abate v. Healthcare International, Inc., 560 So.2d 812, 817 (La.1990), this court in O'Bryan noted that any lapse in the malpractice liability insurance policy filed as proof of financial responsibility, through either its effective period or its form (occurrence or claims-made), rendered the health care provider unqualified during the period of the lapse. O'Bryan, 832 So.2d at 442. Thus, to be qualified, Dr. O'Bryan must have paid the proper surcharge and filed the proper proof of financial responsibility with the Board both on the date of the alleged malpractice and on the date that the claim was filed. O'Bryan, 832 So.2d at 444.
In addressing whether Dr. O'Bryan was a qualified health care provider on the date that the claim was filed, this court noted that if a health care provider chose not to obtain an extended reporting endorsement (tail coverage), then, relative to his claims-made policy for which a claim was made after he qualified as a self-insured for acts that occurred when the health care provider was qualified under a claims-made policy, the health care provider would not be covered under the MMA for that claim. This ruling was based on the health care provider's inability to satisfy the financial responsibility prong of LSA-R.S. 40:1299.42(A). O'Bryan, 832 So.2d at 444.
The O'Bryan case does not reference this court's decision in Hedgepeth. Therefore, we assume that in arriving at its decision in O'Bryan, this court was not asked to consider the impact of the timely filing of a claim by a patient under LSA-R.S. 22:629, LSA-R.S. 9:5628(A), and LSA-R.S. 40:1299.45 after the termination of the claims-made policy as in Hedgepeth. Therefore, under the facts of this case, we do not find the holding in O'Bryan to be dispositive of the issue of coverage by the PCF. Since such an issue resulting from our holding in Hedgepeth was addressed by this court in Bennett, 814 So.2d 681, we find it helpful in our consideration of the instant case to review the facts and holdings of the Bennett case.
In Bennett, the plaintiffs filed a medical malpractice suit in district court against Dr. Robert Krupkin and his insurer, St. Paul Fire & Marine Insurance Company (St. Paul). Dr. Krupkin filed an exception raising the objection of prematurity, contending that he was a qualified health care provider under the MMA and that, as *996 such, plaintiffs were required to first present their claim to a medical review panel. See LSA-R.S. 40:1299.47. The Board filed a petition of intervention, seeking a determination of whether Dr. Krupkin was enrolled as a member of the PCF pursuant to the MMA. The Board urged that Dr. Krupkin was not a qualified health care provider because, although he had paid the appropriate surcharge to the PCF for the period encompassing the date of the alleged malpractice, he had failed to pay a surcharge to the PCF for the period encompassing the date the claim had been filed as required by LSA-R.S. 40:1299.42(A). Bennett, 814 So.2d at 683-84. Subsequently, St. Paul filed a motion for a summary judgment, contending that it did not provide coverage to Dr. Krupkin for that claim since Dr. Krupkin had not renewed his claims-made policy, which had lapsed, and he had failed to purchase an optional reporting endorsement to extend that coverage. Accordingly, St. Paul contended that there was no continuing coverage as of the date the plaintiffs filed their initial complaint against Dr. Krupkin in accordance with LSA-R.S. 40:1299.47, seeking to have their complaint submitted to a medical review panel. Bennett, 814 So.2d at 684.
Subsequently, the plaintiffs in Bennett filed a motion for a partial summary judgment on the issue of coverage under the St. Paul policy relying on Hedgepeth, 691 So.2d 1355.[9] A third motion for a summary judgment was filed in which the Board sought a determination that Dr. Krupkin was not a qualified health care provider under the MMA because Dr. Krupkin had failed to pay a surcharge deemed due by the Board as applicable to the extended claim period resulting from our holding in Hedgepeth. Bennett, 814 So.2d at 684.
After denying St. Paul's motion for a summary judgment in Bennett, the trial court held a hearing on the motions for summary judgment that had been filed by the plaintiffs and the Board, as well as Dr. Krupkin's objection of prematurity. In separate judgments, the trial court (1) granted a final partial summary judgment in favor of the plaintiffs, ruling that the St. Paul policy provided coverage for this alleged act of malpractice, (2) denied the Board's motion for summary judgment, and (3) sustained Dr. Krupkin's exception and dismissed him from the suit without prejudice, finding that Dr. Krupkin was a qualified health care provider under the MMA. Bennett, 814 So.2d at 684. Two appeals followed  one by St. Paul and the other by the Board.
St. Paul appealed the trial court's partial final judgment granting the plaintiffs' motion for summary judgment. This court affirmed the trial court's judgment on the issue of coverage under the St. Paul policy. Bennett v. Krupkin, 99-2702 (La.App. 1st Cir.12/22/00), 779 So.2d 923. Once the supreme court denied writs, the judgment finding that Dr. Krupkin was covered by the St. Paul policy at the time the plaintiffs filed their claim became a final judgment. Bennett v. Krupkin, 01-0193 (La.3/30/01), 788 So.2d 1190.
The Board's appeal in Bennett challenged the judgment sustaining Dr. Krupkin's exception.[10] This court in Bennett, *997 814 So.2d 681, recognized that Dr. Krupkin was qualified under the MMA prior to and at the time of the alleged malpractice  he had purchased a policy of insurance from St. Paul, and St. Paul had collected and remitted to the PCF the surcharge associated with that policy.[11] Recognizing that there had been a final determination[12] that coverage under the St. Paul policy remained in effect through the time when the plaintiffs filed their claim, this court found that the St. Paul policy period and attendant PCF coverage, for which Dr. Krupkin had previously paid, provided protection to him for a "legally-governed period of time" encompassing the plaintiffs' claim.[13]Bennett, 814 So.2d at 687. Accordingly, this court in Bennett found that Dr. Krupkin was a qualified health care provider under the MMA with respect to the plaintiffs' claim; thus, the exception raising the objection of prematurity was properly sustained. Bennett, 814 So.2d at 688.
The facts of the instant case parallel those of Bennett in that Hood filed a medical malpractice suit in district court against Dr. Cotter,[14] who, like Dr. Krupkin, had not renewed his "claims-made" policy, which had lapsed, and who had failed to purchase an optional reporting endorsement to extend that coverage. Although LAMMICO had paid the appropriate surcharge to the PCF on behalf of Dr. Cotter for the period encompassing the date of the alleged malpractice, LAMMICO failed to pay a surcharge to the PCF for the period encompassing the date Hood's claims were filed as required by LSA-R.S. 40:1299.42(A). In the instant case, LAMMICO, like St. Paul, sought a summary judgment on the issue of coverage under its policy. In both, the Board intervened in the district court proceeding and sought a determination by way of a motion for a summary judgment of whether the health care provider was qualified under the MMA.
In Bennett, although raised by St. Paul in its motion for summary judgment, the issue of St. Paul's coverage was determined by a partial final judgment which granted the plaintiffs' motion for a summary judgment based on a finding that the St. Paul policy provided coverage for the *998 alleged act of malpractice.[15] The same conclusion was effectively reached as to coverage by LAMMICO's policy in the instant case by virtue of an interlocutory judgment which denied LAMMICO's motion for a summary judgment.
As to the issue of PCF coverage, the district court in Bennett found that Dr. Krupkin was a qualified health care provider under the MMA and denied the Board's motion for a summary judgment, while sustaining Dr. Krupkin's exception pleading the objection of prematurity. In the instant case, a contrary decision was reached by the district court based on a finding that the PCF did not afford coverage for Hood's claims.
In reviewing the district court's decision to sustain Dr. Krupkin's exception regarding prematurity, this court in Bennett, after considering the coverage afforded by the St. Paul policy, found that Dr. Krupkin was covered by the MMA as a qualified health care provider at the time the plaintiffs instituted their claim. Bennett, 814 So.2d at 688. That determination was based on a finding that once a health care provider had qualified under the MMA, the health care provider's qualification under the MMA was concurrent with the coverage under the underlying insurance policy. Bennett, 814 So.2d at 686-87; see LSA-R.S. 40:1299.42(E)(1); see also LAC 37:III.905.[16] Although the merits of the district court's ruling on the issue of LAMMICO's coverage was considered in this appeal, a final definitive judgment on this issue is lacking.
Applying the rationale of Bennett, which this court is constrained to follow, we conclude that it is impossible to determine at this time whether Dr. Cotter was qualified as a health care provider under the MMA, as such qualification is concurrent with the coverage under the underlying insurance policy issued by LAMMICO. See Bennett, 814 So.2d at 686-87; LSA-R.S. 40:1299.42(E)(1); see also LAC 37:111.905. Therefore, the district court improperly rendered a summary judgment in favor of the Board.

Decree
For the foregoing reasons, those portions of the district court's amended judgment granting the Board's motion for summary judgment, decreeing that there was no PCF coverage for the claims made by Hood against Dr. Cotter, and dismissing the Board from the suit relative to LAMMICO are reversed.[17] That portion of the judgment denying LAMMICO's motion for a summary judgment is affirmed. This matter is remanded for further proceedings consistent with this opinion. Costs of this appeal in the amount of $686.46 are assessed to the Louisiana Patient's Compensation Fund Oversight Board.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
*999 McDONALD, J., dissents for reasons assigned by Judge KUHN.
KUHN, J., dissents and assigns reasons.
McCLENDON, J., voluntarily recused.
KUHN, J., dissenting.
I disagree with the majority's conclusion that Louisiana Medical Malpractice Insurance Company ("LAMMICO") provided coverage for Carl Hood's claims against Mark M. Cotter, M.D., or that the record fails to establish that the former healthcare provider was not a qualified provider under the Louisiana Medical Malpractice Act (MMA).[1] I would reverse the trial court's denial of LAMMICO's motion for summary judgment.[2]
The majority relies on Hedgepeth v. Guerin, 96-1044 (La.App. 1st Cir.3/27/99), 691 So.2d 1355, to conclude that the claims-made policy issued by LAMMICO to Cotter is unenforceable and without effect because it violates La. R.S. 22:629A(3), R.S. 9:5628A, and R.S. 40:1299.45. The Hedgepeth court reasoned:
These statutes guarantee a medical malpractice claimant a period of not less than one year within which to institute a claim against a health care provider and/or his insurer. However, a "claims made" policy, requiring that a claim be made within the policy period, may effectively reduce the time period within which a medical malpractice claimant may institute his action against the insurer.[3]
I disagree with an application of this rationale under the facts of this case.
According to La. R.S. 22:629A(3):
No insurance contract delivered or issued for delivery in this state . . . shall contain any condition, stipulation, or agreement . . . [l]imiting right of action against the insurer . . . to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code. (Emphasis added.)
The record establishes that tail coverage was offered by LAMMICO to Cotter to insure any claims against him that arose after the expiration of the claims-made policy term. Cotter chose not to purchase this insurance coverage. Thus, under the plain language of La. R.S. 22:629A(3), the insurance contract LAMMICO delivered to Cotter did not contain a condition that limited a potential right of action against the insurer to a period of less than one year from the time when the cause of action accrued in connection with all other insurances. Cotter could have purchased tail coverage, but chose not to. Therefore, in connection with all other insurances that LAMMICO made available to Cotter in conjunction with the insuring of the risks associated with malpractice, LAMMICO did not deliver an insurance contract that contained a condition, stipulation, or agreement limiting Hood's right of action against the insurer to a period of less than one year from the time which, according to *1000 the allegations of his petition, the cause of action would have accrued.
Nothing in the facts of Hedgepeth suggests that the insurer, Pacific Insurance Company (Pacific), made tail coverage available to its insured, Dr. Guerin. Indeed, it was Pacific who cancelled the medical malpractice claims-made policy. Thus, it appears that, unlike the policy delivered by LAMMICO, Hedgepeth truly involved a situation which "in connection with all other insurances," the policy delivered to Dr. Guerin effectively limited Julia Hedgepeth's claim for malpractice to a period of less than one year from the time her cause of action accrued. Therefore, Hedgepeth is factually distinguishable and not controlling under the facts of the case before us.
Moreover, the Direct Action statute, see La. R.S. 22:655B(1), does not preclude summary judgment in favor of LAMMICO. The Direct Action statute, which provides an injured person, at his option, to have a right of direct action against the insurer of a tortfeasor, expressly limits that action "within the terms and limits of the policy." Thus, any liability LAMMICO may have had as a matter of the insurance contract, and any right of direct action against LAMMICO that Hood may have had pursuant to the Direct Action statute, ended on January 1, 2004, when the terms and limits of the claims-made policy that Cotter chose to purchase terminated. LAMMICO  whose potential liability to Hood would have arisen as a matter contract, i.e., the policy of insurance it issued to the alleged tortfeasor  did not cause the damages Hood incurred and, therefore, is not a "joint tortfeasor" with Cotter as the majority holds. See La. C.C. art. 2324C.
This court should overrule its opinion in Bennett v. Krupkin, 99-2702 (La.App. 1st Cir.12/22/00), 779 So.2d 923, insofar as it holds that a claims-made policy is unenforceable and without effect because it violates La. R.S. 22:629A(3), R.S. 9:5628A, and R.S. 40:1299.45 when the insurer has clearly made tail coverage available but the insured chose not to purchase it. When an insurer has delivered a policy allowing the insured to purchase tail coverage, and the insured chooses not to, opting instead to assume the risk of any claims against him made after the expiration of the claims-made policy term, La. R.S. 22:629A(3) has not been violated.
For these reasons, there is no coverage under the claims-made policy Cotter elected to purchase from LAMMICO, and the former health care provider is no longer qualified under the MMA at the time Hood instituted his lawsuit. See La. R.S. 40:1299.42E(1) and LAC 37:III.905A. I believe the trial court's denial of LAMMICO's motion for summary judgment should be reversed and, like the PCF Oversight Board, the insurer should be dismissed from this lawsuit. Accordingly, I dissent.
NOTES
[1] Under a "claims-made" policy, coverage is effective only if the negligent harm is discovered and reported within the policy term. This is contrasted with an "occurrence" policy, where the coverage is effective if the negligent harm occurs within the policy period, regardless of the date of discovery. Hedgepeth v. Guerin, 96-1044 (La.App. 1st Cir.3/27/97), 691 So.2d 1355, 1359, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983.
[2] This extension, referred to as tail coverage, covers occurrences within the policy period that produce claims within the specified extended reporting period. See Anderson v. Ichinose, 98-2157 (La.9/8/99), 760 So.2d 302.
[3] LAMMICO filed an application for a supervisory writ seeking review of the denial of its motion for summary judgment, which was denied. Hood v. Cotter, 06-1086 (La.App. 1st Cir.9/5/06)(unpublished writ action). The Board filed a memorandum in response to LAMMICO's writ application urging this court to grant writs. LAMMICO's writ application addressed the timeliness of Hood's action against it.
[4] We note that neither Hood nor Dr. Cotter appealed from the judgment that ordered the Board's dismissal from Hood's suit.
[5] After Hedgepeth, the Louisiana Supreme Court decided Anderson v. Ichinose, 98-2157 (La.9/8/99), 760 So.2d 302. In a claims-made policy, the claim "is the event and peril being insured and subject to policy language, regardless of when the occurrence took place." Anderson, 760 So.2d at 305. Unless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obligations they contractually assume. Id. at 306. The right given to a plaintiff by the Direct Action Statute is "the right to sue the insurer directly when the liability policy covers a certain risk." Id. at 307. The supreme court found that under the circumstances of Anderson, the Direct Action Statute did not extend any greater right to third-party tort victims who were damaged by the insured. Id. Therefore, the provisions of the claims-made policy did not violate the Direct Action Statute. Id.

Anderson's holding was limited to the facts of that case and only discussed an alleged violation of the Insurance Code as it related to the Direct Action Statute. In Anderson, the supreme court did not cite, discuss, overrule, or distinguish this court's decision in Hedgepeth. Following Anderson, this court in Bennett v. Krupkin, 99-2702 (La.App. 1st Cir. 12/22/00), 779 So.2d 923, writ denied, 01-0193 (La.3/20/01), 788 So.2d 1190, again examined a claims-made policy provision that allegedly violated LSA-R.S. 22:629. Bennett, 779 So.2d at 923. A plaintiff in Bennett found out that her doctor allegedly misdiagnosed her breast cancer on October 25, 1996. The doctor had a claims-made policy that "covered only claims which were made during the policy period and arose from events which occurred during the retroactive period covered by the policy." Id. at 924. The policy was in effect at the time of the misdiagnosis but not at the time the claim was made. Id. at 925. Premiums were paid on the policy through January 15, 1997. On the face of the policy, the doctor was not covered for the plaintiffs' claims because the policy provision required that the Bennetts' claims be made prior to January 15, 1997. Id. at 925. This court found that the Bennetts' filing of their claims with the Commissioner of Insurance on March 20, 1997, and their suit less than one month later were well within the one year time frame envisioned by LSA-R.S. 22:629. Bennett, 779 So.2d at 926. Thus, this court found that the trial court correctly applied this court's decision in Hedgepeth to the Bennett facts and properly granted summary judgment in favor of the Bennetts, stating:
Under the undisputed facts of this case, the instant policy provision likewise effectively reduces the prescriptive period such that the Bennetts effectively had less than one year from the date of the accrual of their cause of action to commence the action against St. Paul. Because "[t]his would be a clear violation of the statutory law, which prohibits limiting a right of action against an insurer to less than one year," Hedgepeth, 96-1044 at p. 14, 691 So.2d at 1364, the district court properly granted summary judgment in favor of the Bennetts on the issue of coverage in this case.
Bennett, 779 So.2d at 926. This court found the facts of Bennett to be "highly distinguishable" from those of the Anderson case. This court interpreted the cause of action in Anderson as accruing after the policy period expired on October 25, 1996, the date that the plaintiff found out that the earlier biopsy had been incorrectly reported, instead of the date of the original misdiagnosis. Bennett, 779 So.2d at 925. The facts of Bennett were found to be distinguishable in that the Bennetts' cause of action accrued while the policy was in effect, as opposed to after the policy expired.
[6] An injured person, at his option, shall have a right of direct action against the insurer within the terms and limits of the policy. Such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido. LSA-R.S. 22:655(B)(1).
[7] We note that LAMMICO's extended coverage resulting from our holding in Hedgepeth is effective only to the extent that the alleged acts of malpractice occurred, or the cause of action accrued, within the one-year period prior to April 29, 2004, the date Hood's suit was filed.
[8] The Board's rules equate self-insurance with occurrence coverage. O'Bryan, 832 So.2d at 445.
[9] As previously stated, this court in Hedgepeth held that a provision of a claims-made policy requiring that a claim be made within the policy period is without effect if it reduces the prescriptive period for making a claim against the insurer to less than one year, in violation of LSA-R.S. 22:629.
[10] The appeal was dismissed. Bennett v. Krupkin, 00-0023 (La.App. 1st Cir.12/22/00) (unpublished opinion). However, the dismissal was reversed by the supreme court, and the matter was remanded to this court for consideration of the merits of the Board's appeal. Bennett v. Krupkin, 01-0209 (La.10/16/01), 798 So.2d 940.
[11] See LSA-R.S. 40:1299.44(A)(3)(b).
[12] See Bennett, 788 So.2d 1190.
[13] Louisiana Revised Statute 40:1299.42(E)(1), governing methods of establishing proof of financial responsibility, provides in pertinent part:

Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider. . . .
Additionally, LSA-R.S. 40:1299.45(A)(1) provides that only while malpractice liability insurance remains in force are the health care provider and his insurer liable to a patient, or his representative, for malpractice to the extent and in the manner specified in the MMA. Bennett, 814 So.2d at 686. Thus, once a health care provider has qualified under the MMA, the health care provider's qualification under the MMA is concurrent with the coverage under the underlying insurance policy, i.e., qualification takes effect and follows the same form as the policy of insurance. Id. at 686-87.
[14] LAMMICO was joined as a defendant in an amending petition by Hood.
[15] In the instant case, Hood did not file such a motion.
[16] With respect to health care providers that are qualified for enrollment with the PCF by evidence of liability insurance pursuant to LAC 37:III.505, the PCF shall be liable for compensation for claims asserted against the health care provider only within the scope of coverage afforded by, and subject to the limitations and exclusions of, the policy of professional liability insurance evidencing the health care provider's financial responsibility, subject to the limitation of liability prescribed by the MMA. LAC 37:III.905(A).
[17] In so ruling, we render no opinion as to the legal implications that the failure of Hood and Dr. Cotter to appeal from the judgment that granted the Board's motion for summary judgment and dismissed the Board from the suit, with prejudice, may have on the issue of the liability of the PCF.
[1] See La. R.S. 40:1299.41-1299.49.
[2] Despite the majority's reversal of the trial court's grant of the PCF Oversight Board's motion for summary judgment, that portion of the judgment was not appealed by any party and, therefore, is not properly before us.
[3] When read alone, nothing in the provisions of either La. R.S. 9:5628A (which sets forth a period of time for a claimant to institute a claim against specified health care providers) or R.S. 40:1299.45 (providing for the scope of malpractice coverage necessary for participation in the MMA) guarantees a medical malpractice claimant a period of not less than one year within which to institute a claim against the insurer of a health care provider.